MARIE C. BAUDENBACH, Respondent, *v.* OTTO SCHWERDTFEGER, Defendant, Impleaded with MAURICE F. SCHLESINGER, Doing Business under the Firm Name and Style of BENDINER & SCHLESINGER, Appellant.

Third Department, September 20, 1928.

*Wiswall, Walton, Wood & MacAffer* [*Frank L. Wiswall* of counsel], for the appellant.

*James Taylor Lewis,* for the respondent.

HINMAN, J. The plaintiff sued two defendants — the appellant Schlesinger and Dr. Schwerdtfeger — because Schlesinger, who conducted a laboratory, negligently manufactured for injection into the plaintiff by the doctor a vaccine which contained pus-producing germs and caused an abscess on her leg and because the doctor negligently administered the vaccine and neglected the plaintiff after she was poisoned by it. The jury exonerated the doctor and held the manufacturer of the vaccine responsible in negligence for plaintiff's suffering in the sum of $5,000 damages. The appellant Schlesinger contends that the jury was permitted to speculate as to the cause of the injury, that the verdict was excessive and that prejudicial errors were committed in the reception of evidence.

It is well settled that the jury will not be permitted to speculate and that a verdict based on speculation is contrary to law and will be set aside on appeal and a motion for a new trial granted. (*Taylor* v. *City of Yonkers,* 105 N. Y. 202; *Ruback* v. *McCleary, Wallin & Crouse,* 220 id. 188; *Searles* v. *Manhattan R. Co.,* 101 id. 661.) "The rule is well settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which defendant was responsible. If the matter is left in doubt and it is just as probable that the injury was the result of one cause as the other, there can be no recovery." (*Ruback* v. *McCleary, Wallin & Crouse, supra,* 195.)

There is no direct proof of the defendant Schlesinger's negligence in the preparation of the vaccine or in sealing the containers, or ampules, as they are called, in which the fluid vaccine was placed. The proof, undisputed except in part by possible inference, is that an employee of Schlesinger, who had worked for him for fifteen years, prepared the vaccine from a portion of a stool of the plaintiff; that it was uniformly prepared in one process and in one receptable and subjected to sufficient heat to kill all live bacteria, including colon bacilli found in the stool; that a heating process sufficient to kill colon bacilli is likewise destructive of staphylococcus aureus and albus, two pus-producing germs commonly found in the air and which certain chemists, employed by the defendant doctor, found in the vaccine upon making cultures from the contents of some of these ampules after the plaintiff suffered an abscess at the

seat of an injection of this vaccine taken from one of the ampules; that twenty of these ampules had been filled with the vaccine, each containing about fifteen drops of anti-toxin serum, free from live bacteria; that these ampules were sterilized and were hermetically sealed without fractures or holes in them; that the ampules were fragile and easily fractured and required most careful handling to prevent holes or breaks in the surface; that such holes or breaks would admit air, even though not sufficient to cause any leakage of the fluid, and germs commonly present in the air such as were found by the chemists could enter the vaccine; that the box containing the vaccine ampules remained in the doctor's office for about five weeks before the examination of the contents of any of the ampules by the chemists and during that period had been subjected to frequent handling, especially by the doctor's nurse, who was not a witness at the trial and who handled the box in his absence; that neither the doctor nor the chemists made proper examination of the ampules to discern whether there were holes or breaks in the surface; that no colon bacilli were found by the chemists, thus proving undisputedly that heat had been applied, in making the vaccine, sufficient to kill not only those germs but also the germs commonly present in the air actually found by the chemists; that the organisms found by the chemists, being commonly present in the air, could have entered the serum through careless handling of the box of ampules by the nurse or someone other than the employee of the defendant Schlesinger; that the plaintiff received five injections of the vaccine from five different ampules, the first four being four days apart and the fifth being five days after the fourth; that the first injection was of seven and one-half drops of the vaccine and for a day or two thereafter the plaintiff suffered from headache, weakness and slight rise of temperature, which was the usual reaction to such vaccine treatment; that the second injection was of one and one-half drops which passed off easily; that the third injection of five drops affected her in the same way as the first but less severely; that the fourth injection was of seven and one-half drops from which she received no particular reaction; that no swelling or abscess appeared at the point of any of these injections; that the fifth injection was of ten and one-half drops, was given by the doctor's nurse and not in his presence, and in addition to the usual reaction of headache, weakness and rise of temperature, which had followed the previous injections except the fourth, she suffered nausea and pain at the point of the injection, which pain became severe and a hard swelling about the size of an egg or small fist appeared at that point in about five days and developed into an abscess, which was later lanced by a physician sent by the defendant doctor; that no

culture was taken of the pus which came from the abscess and there is no direct proof of any kind as to the nature of the germs which caused it to form; that almost every kind of bacteria will form pus in the human tissues; that the doctor's nurse, who made the last injection, was not called as a witness and her method of making the injection was not disclosed; that the abscess could have been caused by agencies other than the vaccine itself, such as germs from an unsterilized hypodermic syringe or needle or from a failure of the nurse to sterilize her hands or the skin of the patient or anything in contact therewith.

It appears without dispute that certain bacilli found in the colon were killed by the heat applied in preparation of the serum and that other germs from the same source would succumb at a lower temperature. So we may regard it as established that there was no neglect or lack of skill in the original preparation. The testimony of experts warrants the conclusion that the infection might have occurred either (1) through neglect in handling of the ampules of serum or the lack of sterilization of the needle or otherwise in administering this serum by Dr. Schwerdtfeger's nurse, or (2) by reinfection of the serum through the air after it had been prepared and before it had been placed in the ampules, or by failure properly to seal the ampules or to add a necessary preservative which would prevent the growth of germs within the ampules. For the first Schlesinger could not be liable. For the second he might be so held.

The nurse was alone with the plaintiff at the time the fifth injection was made and although the doctor had given the nurse instructions as to the proper method of sterilization in the course of making an injection, it does not appear that the nurse followed those directions. The plaintiff has failed to negative such a " break in surgical technique," as it was termed by one of the experts, and an undisputed possibility in the case. The proof of the doctor that he did not personally contaminate the contents of the ampules did not reach the vital point of this possibility.

Moreover, it is possible that the bacteria found by the chemists could have been introduced into the ampules through breaks or holes not discernible by the naked eye caused by improper handling by the nurse, and the evidence of the plaintiff has not negatived this possibility. It is argued that this is a remote possibility but the undisputed proof is that four injections of the same vaccine were unaccompanied by any such untoward symptoms or result. No swelling or abscess followed at the point of any of such injections and no reaction of any kind followed the fourth injection, although the dose was almost as large as the fifth.

No doubt the plaintiff, on the trial, relied upon the probability that Dr. Schwerdtfeger on his defense would establish as a matter of affirmative proof that his technique was sound and thus fix the blame on defendant Schlesinger. There was a gap in the proof, in that the nurse who alone handled the ampules and administered the injection which caused the abscess was not called as a witness to show that it could not be traced to a cause for which she was responsible.

This lack of proof left open the question as to which of two persons was responsible for the result. It is clear that there were several possible causes of injury for at least one of which the defendant Schlesinger was not responsible; and it was a matter of doubt as to which cause resulted in the injury. The jury were not left in a position to determine by reasonable inference to be drawn from the facts as to which party involved in the transaction was responsible (*White* v. *Lehigh Valley R. R. Co.*, 220 N. Y. 131, 135; *Ruback* v. *McCleary, Wallin & Crouse*, Id. 188, 195; *Searles* v. *Manhattan R. Co.*, *supra*), and the plaintiff failed to meet the burden which the law placed upon her of establishing that of two inferences one is more consistent and logical than the other if appeal is made to a reasonable mind. (*Ford* v. *McAdoo*, 231 N. Y. 155, 161.)

In cases of this kind involving infection by germs microscopic in size, the plaintiff is not required to establish the source of infection by direct proof; he must furnish the best evidence available, leaving the jury to draw the inference from established facts. This method of proof usually involves the exclusion as far as possible of other probable sources of infection. (*Forbes* v. *City of Jamestown*, 212 App. Div. 332, 335; *Wiesner* v. *City of Albany*, 224 id. 239, 242.) Having made such proof, even though reasonable minds might differ as to the cause, it becomes a question of fact to be determined by the jury as to how the infection originated. (*Gordon* v. *Ashley*, 191 N. Y. 186, 193; *Warner* v. *New York, Ontario & Western R. Co.*, 209 App. Div. 211, 213; appeal dismissed, 239 N. Y. 507.)

In this case fundamental proof was lacking and the rule just stated could not be applied. The verdict of the jury must necessarily have been founded on speculation and conjecture.

One other phase of the record remains, however, to be considered. The plaintiff claims that the defendant Schlesinger admitted that he was at fault in a letter written by him to the plaintiff and in a letter and telephone communication from him to the defendant doctor. The alleged admissions were too vague and equivocal to furnish the basis of liability in the absence of other reasonably clear proof of his negligence. They did not admit a fact but were intended to exculpate Dr. Schwerdtfeger. They were made at a

time when the physician was complaining that his patient was dissatisfied with his treatment and was casting the blame on him.

Since a new trial should be granted for the reasons stated, it becomes unnecessary to consider the questions of the excessiveness of the verdict or the other errors complained of.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN KIRK, P. J., DAVIS and WHITMYER, JJ., concur; HILL, J., dissents on the ground that the admissions of the defendant Schlesinger taken in connection with the other evidence justified the verdict of the jury.

Judgment and order reversed on the law and the facts and new trial granted, with costs to the appellant to abide the event.