MITA GRAWUNDER, Respondent, Appellant, *v.* BETH ISRAEL HOSPITAL ASSOCIATION, Appellant, Respondent, Impleaded with CHARLES GOODMAN, Defendant.

Second Department, June 4, 1934.

*Carsten H. Ludder,* for the plaintiff.

*Lloyd Paul Stryker* [*Lorenz J. Brosnan* and *Francis L. Driscoll* with him on the brief], for the defendant Beth Israel Hospital Association.

Judgment and order unanimously affirmed, without costs, on opinion of Mr. Justice Lockwood at Trial Term.

Present — Lazansky, P. J., Young, Kapper, Tompkins and Davis, JJ.

The following is the opinion of the court below:

Lockwood, J. This action was tried before me on October 9, 1933. During the trial the case was discontinued against the defendant Charles Goodman and proceeded against the defendant hospital.

The jury rendered a verdict in favor of the plaintiff for $2,000. The defendant moved to set aside the verdict and for a new trial on all the evidence and on all grounds stated in section 549 of the Civil Practice Act except insufficiency. Decision was reserved upon this motion, with leave to counsel to submit briefs. Briefs from both parties are now before the court.

The plaintiff's deceased husband was a patient at the defendant hospital, entered by his family physician, whom he was obliged to pay. He paid on December 2, 1929, eighty-four dollars, one week's board in advance, ten dollars for operating room, six dollars for laboratory, fifteen dollars for drugs and supplies, and eighteen dollars for nurses. The following day he paid ninety dollars for nurses, in advance. On December 5, 1929, he paid fifty dollars for blood transfusion, and seventy-five dollars for services in connection therewith. The same day at eight P. M. he died and the body was removed to the hospital morgue.

The undertaker procured by the plaintiff to care for the body and prepare it for burial called at the hospital at nine A. M. the following day and asked that the body be delivered to him. He was told by the hospital authorities that the body was not yet ready for delivery, and he was compelled to wait until three o'clock in the afternoon before he obtained the body.

It was later discovered that an unlawful autopsy had been performed on this body in the hospital, the vital organs removed and the space formerly occupied by them filled with cotton. The plaintiff gave no permission for the performance of said autopsy.

The plaintiff, widow of the deceased, brought this action, asking damages for injuries to her feelings and mental suffering resulting from the foregoing.

The defendant disclaims all responsibility on the ground that it is a charitable institution and would not be liable unless the plaintiff proved that the hospital actively participated in the unlawful act. It contends that since no proof was submitted at the trial of any active participation by the hospital in the autopsy the plaintiff's case fails and the motion to set aside the verdict should be granted.

In *Hasselbach* v. *Mount Sinai Hospital* (173 App. Div. 89) the action was by a widow for damages because of an unauthorized autopsy performed upon the body of her deceased husband. The court in that case said (at p. 91): " The question is, therefore, squarely presented whether or not the defendant owed an absolute duty to plaintiff to protect her husband's body against a post mortem autopsy by any person whomsoever, and to deliver said body to her in the same condition that it was immediately after death. The plaintiff insists that defendant was under such a duty. We do not so understand the law. Certainly no reported case has gone to this extent.

" It is well settled that in the absence of a contrary testamentary disposition the right to the possession of the body of one who has died belongs to the surviving husband or wife or next of kin for purposes of preservation and burial, and that this right is infringed upon by any one who unlawfully mutilates such a body without the consent of the person entitled to the possession thereof (*Darcy* v. *Presbyterian Hospital*, 202 N. Y. 259; *Foley* v. *Phelps*, 1 App. Div. 551; *Larson* v. *Chase*, 47 Minn. 307), and for a violation of this right damages may be recovered for the injury to the feelings and the mental suffering resulting from the unlawful act. In all the cases, however, in which such a right of action has been upheld, the person held liable has either been the one who committed the unlawful act, as in *Foley* v. *Phelps*, or one who caused or procured the autopsy

to be made, as in *Darcy* v. *Presbyterian Hospital.* None of them, therefore, are authority for the proposition contended for by the plaintiff in this action."

In that case, however, not only did the plaintiff fail to allege in her complaint that the autopsy was performed by the defendant, or by any of its servants, or by its consent, knowledge, privity or procurement, but she expressly admitted by her demurrer that the person or persons performing the autopsy were not servants or agents of the defendant, and at the time the autopsy was performed were pursuing an independent calling and were not acting under the direction or instruction of the defendant.

In the case under consideration, the plaintiff, in substance, alleges in her complaint that the unlawful act was committed by the defendant, its agents or employees, while the defendant had the exclusive and absolute possession and control of the body. The *Hasselbach* case is, therefore, not in point and the doctrine expounded therein does not bar the action of the plaintiff in this case.

*Phillips* v. *Buffalo General Hospital* (239 N. Y. 188), cited by the defendant, involves the injury to a patient through the alleged negligence of an orderly, engaged in nursing. In the present action the plaintiff was not a patient of the hospital, and her action is based, not on mere negligence, but on the separate and independent tort, viz., the unauthorized mutilation of her deceased husband's body.

The reasons that have led to the adoption of the rule that a charitable institution is immune from liability to patients because of the wrongful act of its servants are not applicable when the sufferer is not a patient. (*Schloendorff* v. *New York Hospital,* 211 N. Y. 125.)

The plaintiff in this action charges that the defendant hospital has interfered with her right to receive her deceased husband's body whole and unmutilated.

At the trial the plaintiff proved that the body was in the exclusive control and possession of the hospital from the time of death — eight P. M.— until three o'clock the following afternoon. The testimony further shows that when the undertaker procured by the plaintiff to care for the body called at the hospital at nine A. M., and demanded the delivery of the body, he was told by the hospital authorities that the body was not yet ready for delivery, and he was compelled to wait until three o'clock that afternoon before he received the body. Testimony to the effect that the body was mutilated and its vital organs missing at the time the undertaker received it at the hospital was uncontradicted.

The defendant submitted proof of its rule that autopsies were performed at the hospital only with the written consent of the family of the deceased, and then only by the pathologist. The pathologist testified that he did not perform said autopsy, or direct it to be performed. Dr. Kopetzky, medical director of the hospital, called before him the house staff and each member denied that he had performed the autopsy.

Defendant's witnesses testified that the body was locked in the morgue, the key being kept in the office of the defendant hospital. The doctors and hospital employees had access to this key. The hospital employees who had charge of the morgue were never present there unless some one wanted to use the morgue.

Therefore, claims the defendant, since the plaintiff has failed to prove that the defendant authorized or actively participated in the unlawful autopsy and there is proof that the hospital did not authorize this unlawful act, the plaintiff's verdict may not be sustained.

The *Hasselbach Case* (*supra*) states that a hospital is not liable for an autopsy performed on a body in its possession and control by persons not acting under its direction or instruction; that a hospital is under no absolute duty to prevent an autopsy being performed by any person whomsoever. The jury in the present case was so charged.

This court is not of the opinion that a hospital should be an insurer of the safety of a dead body in its possession and that liability should be fixed upon the hospital because of the mutilation of a body in its possession by any person or from any cause whatsoever.

The evidence in this case clearly shows that the body was mutilated while in the exclusive possession and control of the hospital. The plaintiff, of course, could furnish no proof as to who did the unlawful act. The defendant hospital disclaims all knowledge of this particular autopsy, and calls attention to its rule concerning the performance of autopsies. This rule, however, was not observed or enforced in this instance, and might have been non-existent so far as this plaintiff is concerned.

The defendant, which should have knowledge of all the facts, did not show that some person pursuing an independent calling and not acting under the authority or direction of the hospital performed the autopsy. The defendant alone knows what transpired within its walls during the night and morning following the death of the plaintiff's husband.

If, in a case of this kind, the plaintiff were obliged to prove what person or persons actually performed the autopsy, such

unlawful mutilations could be perpetrated with impunity and a hospital could always avoid liability by claiming no knowledge. The performance of an unlawful autopsy is usually secret and furtive. Certainly all means would be taken by the guilty ones to prevent knowledge of it from reaching the family of the deceased.

The hospital had the means to exercise control over what took place within its own building, a new, modern structure. Requiring it to take some precaution to prevent the unlawful mutilation of deceased patients is not placing an undue burden upon it, and it should not be allowed to avoid all liability by professing ignorance of what has happened within its own confines.

If the rule urged by the defendant were adopted by our courts, there would be no assurance that the body of any one who died in a hospital would be safe from mutilation.

The defendant contends that the jury's verdict could have been founded only on pure speculation as to who performed this unlawful autopsy; and it is well settled that a jury's verdict cannot rest upon mere speculation. (*Baudenbach* v. *Schwerdtfeger*, 224 App. Div. 314.)

Can it be said in this case that the jury's verdict rested upon mere speculation? In view of all the facts established at the trial, the refusal of the hospital to deliver the body to the undertaker until three o'clock in the afternoon, six hours after the usual time for delivery of a body when death takes place during the night, it appears that in the absence of direct evidence it was possible for the jury by reasonable inferences to find that this unlawful autopsy was performed by the direction or with the knowledge, consent or permission of the defendant hospital.

An inference cannot be based upon an inference. (*Lamb* v. *Union R. Co.*, 195 N. Y. 260.) In order to prove a fact by circumstances there should be positive proof of the facts from which the inference is drawn, and the circumstances must not be left to rest in conjecture. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.) The circumstances and facts upon which the jury based its inferences in this case were clearly proven.

If any legitimate conclusion can reasonably be drawn from the evidence, it should not be wholly rejected by the court. The jury should pass upon it, and if the trial judge or the Appellate Division is not satisfied with the soundness of the conclusions reached, the verdict should be set aside and a new trial ordered. (*Queeney* v. *Willi*, 225 N. Y. 374.) The trial court is satisfied with the soundness of the conclusions reached by the jury in this case.

The defendant contends that if the verdict is not set aside it should be reduced as the plaintiff has not shown much damage.

Juries may be allowed to give damages that express indignation at the defendant's wrong rather than a value set on plaintiff's loss. (*Voltz* v. *Blackmar*, 64 N. Y. 440; *Gostkowski* v. *Roman Catholic Church, etc.*, 262 id. 320.) In the latter case a verdict of $2,000 rendered in an action for damages for the removal of a body from one plot to another in the same cemetery was reduced to $1,000 by the Appellate Division and, as reduced, affirmed by the Court of Appeals.

As the verdict in this case seems excessive, it is reduced to $1,000. Otherwise the motion is denied.