■ JOSEPH KALINA, Appellant, v. GENERAL HOSPITAL OF THE CITY OF SYRACUSE et al., Respondents. LEE KALINA, Appellant, v. GENERAL HOSPITAL OF THE CITY OF SYRACUSE et al., Respondents.

Order insofar as appealed from affirmed, without costs of this appeal to either party.

HALPERN, J. (dissenting). I believe that the second cause of action alleged in the complaint states a good and sufficient cause of action and that the motion to dismiss the complaint should have been denied. (There are two actions, one brought by the father and the other by the mother; they will be referred to herein as if the father and mother were coplaintiffs in a single action.)

So far as the defendant General Hospital is concerned, the complaint, in my opinion, is sufficient to charge the hospital with intentional wrongdoing. The complaint alleges that after the birth of the plaintiffs' son on September 20, 1958, the plaintiffs informed the hospital that he "was to be circumcised by a Rabbi * in a ritualistic ceremony in accordance with the Jewish religion and Jewish custom and practice" and that, notwithstanding this affirmative notice, the Hospital participated, aided and assisted in an operation upon the plaintiffs' son by the defendant doctor, resulting in his circumcision, on September 24, 1958. The operation was performed by a person not qualified to perform it under Jewish religious law; the prescribed religious ritual was not observed; and the operation was performed prematurely on the 4th day, whereas the religious law requires it to be performed on the 8th day. All this, it is charged, "violated the plaintiff[s'] religious rights, beliefs and customs". It is further alleged that as a result "the plaintiff[s] sustained severe and intense mental pain and anguish". Giving the plaintiffs the benefit of all reasonable intendments of the pleading, the complaint may properly be construed as charging that the hospital intentionally inflicted "mental pain and anguish" upon the plaintiffs. The right to recover for the intentional infliction of mental anguish has long been recognized in New York State. (For the recent cases, see *Halio* v. *Lurie*, 15 A D 2d 62; *Scheman* v. *Schlein*, 35 Misc 2d 581; *Bergman* v. *Rubenfeld*, 66 N. Y. S. 2d 895; *Mitran* v. *Williamson*, 21 Misc 2d 106; Note, 12 Syracuse L. Rev. 131; for the older cases see *Preiser* v. *Wielandt*, 48 App.

---

* The correct term for a person authorized to perform circumcisions under Jewish law is "mohel". He is specially trained, both scientifically and religiously, but he is not usually referred to as a Rabbi. His qualifications are passed upon both by medical and religious authorities. (Finkelstein, The Jewish Religion: Its Beliefs and Practices, in The Jews: Their History, Culture and Religion, vol. 4, p. 1376.)

Div. 569; *Williams* v. *Underhill,* 63 App. Div. 223; *Beck* v. *Libraro,* 220 App. Div. 547; see, also, Restatement, Torts [1948 Supp.], § 46; cf. *Garrison* v. *Sun Print. & Pub. Assn.,* 207 N. Y. 1).

Malice in the sense of ill will or a desire to cause injury is not essential to sustain a recovery for intentional wrongdoing. It is enough for the plaintiff to show that the defendant knowingly and intentionally did the act which caused the damage and that the damage was substantially certain to follow (Restatement, Torts, § 13, Comment d; Restatement, Torts Second, Tentative Draft No. 1, § 8 A; see *Mitran* v. *Williamson,* 21 Misc 2d 106, 109, *supra.*) In this case, it sufficiently appears from the complaint that the hospital intentionally violated the plaintiffs' instructions and that the mental and emotional distress of the plaintiffs was substantially certain to follow from the violation.

Even if the complaint is construed as not charging an intentional violation by the hospital, the allegations of the complaint are sufficient to charge that the hospital acted recklessly in disregarding the plaintiffs' express directions and proceeding with the operation in violation of the plaintiffs' religious belief. Recklessness, under these circumstances, is the equivalent of intention (*Beck* v. *Libraro,* 220 App. Div. 547, 548, *supra*; Annotation 64 A. L. R. 2d 100, 119–120; Prosser, Intentional Infliction of Mental Suffering, 37 Mich. L. Rev. 874, 878–879).

The liability of the hospital may also be predicated upon its contractual relationship with the plaintiffs. It is reasonably inferrable from the complaint that the hospital promised the plaintiffs that it would obey their instructions and would respect their religious beliefs. It willfully breached this promise. " The defendant had reason to know when the contract was made that the breach would cause mental suffering " (Restatement, Contracts, § 341). The hospital is therefore liable for the mental suffering caused by the breach. The liability may be enforced by an action either in contract or in tort. (*Gillespie* v. *Brooklyn Hgts. R. R. Co.,* 178 N. Y. 347; *De Wolf* v. *Ford,* 193 N. Y. 397; *Aaron* v. *Ward,* 203 N. Y. 351; *Boyce* v. *Greeley Sq. Hotel Co.,* 228 N. Y. 106; *Smith* v. *Leo,* 92 Hun 242). Furthermore, the hospital owed a special duty to protect the emotional tranquillity of the plaintiff Lee Kalina, who was a patient in the hospital and who had just undergone the strain of childbirth. One who bears a special contractual relationship to another giving rise to a duty to protect the other's emotional tranquillity is liable for any conduct causing emotional distress. (See cases *supra* and see generally McNiece, Psychic Injury and Tort Liability in New York, 24 St. John's L. Rev. 1, 37–44; Prosser, *op. cit. supra,* at pp. 881–883.)

As to the cause of action against the defendant doctor, it may well be that the allegations of the complaint are not sufficient to charge him with intentional wrongdoing or recklessness or breach of contractual relationship. But they are plainly sufficient to charge negligence on his part. According to the allegations of the complaint, the hospital made a notation upon the son's hospital record " that the plaintiff's said son was to be ritualistically circumcized." It was certainly negligent on the part of the defendant doctor to proceed with the operation without reading the hospital record and without consulting the plaintiffs. The complaint therefore states a cause of action against the doctor for the negligently causing of emotional distress and mental suffering.

That such a cause of action is cognizable in New York State was established by two recent decisions of the Court of Appeals. In *Ferrara* v. *Galluchio* (5 N Y 2d 16, 21) the court held that " Freedom from mental disturbance is now a protected interest in this State " and that recovery may be had for a violation of this freedom when a " guarantee of genuineness " can be found " in the circumstances of the case." In the later case of *Battalla* v. *State of New York* (10 N Y 2d 237) the court held that a recovery could be had for mental

or emotional distress, without any contemporaneous physical contact or direct physical injury, overruling *Mitchell* v. *Rochester Ry. Co.* (151 N. Y. 107).

It is true that in the complaint in the *Battalla* case there was a reference to "residual physical manifestations" resulting from the mental or emotional disturbance, but there is nothing in the opinion of the court to indicate that the court meant to limit the right of recovery for mental or emotional disturbance to cases in which physical illness had resulted. (See note on the *Battalla* case, 37 N. Y. U. L. Rev. 331, 334–337.) In modern times, it is recognized that there is no real distinction between emotional distress and physical illness. "The point has been long ago made that, as a scientific matter, all severe emotional disturbances create bodily changes which are measurable. See Goodrich, Emotional Disturbance as Legal Damage, 20 Mich. L. Rev. 497 (1922)". (1 Harper and James, Torts, 666, note 5; see, also, Annotation 64 A. L. R. 2d 100, 104.) Physical illness resulting from mental or emotional disturbance may of itself be a guarantee of the genuineness of the alleged disturbance, but recovery may be had without a showing of physical illness, if it is otherwise established that the mental or emotional disturbance was genuine. "Where such a guarantee can be found, and the mental distress is undoubtedly real and serious, there is no essential reason to deny recovery" (Prosser, Torts [2d ed.], p. 180). The genuineness of the mental distress is, of course, to be decided after a trial and not upon a motion addressed to the pleadings. (*Battalla* v. *State of New York*, 10 N Y 2d 237, 242, *supra*.)

Shortly after the decision of the *Battalla* case, the right to recover damages for emotional distress and mental suffering was upheld, where the body of a close relative had been improperly prepared for burial in a manner which violated the religious beliefs of the plaintiff (*Lott* v. *State of New York*, 32 Misc 2d 296). The *Lott* case was followed in *Torres* v. *State of New York*, 34 Misc 2d 488. (See, also, *Nieman* v. *Upper Queens Med. Group*, 220 N. Y. S. 2d 129.)

Even before the *Ferrara* and *Battalla* cases, the courts of this State, in a variety of situations, had recognized the right to recover for the negligent causing of emotional distress or mental suffering. One line of cases in which liability was imposed in the past grew out of the mishandling of the bodies of deceased relatives. More than 50 years ago, a complaint by a husband was upheld for an unauthorized autopsy performed upon his deceased wife's body, which the complaint alleged "outraged his religious feeling" (*Jackson* v. *Savage*, 109 App. Div. 556, 558; see, also, *Foley* v. *Phelps*, 1 App. Div. 551; *Hassard* v. *Lehane*, 143 App. Div. 424; *Grawunder* v. *Beth Israel Hosp. Assn.*, 242 App. Div. 56, affd. 266 N. Y. 605; *Beller* v. *City of New York*, 269 App. Div. 642; *Darcy* v. *Presbyterian Hosp.*, 202 N. Y. 259.) The emotional distress caused by the unauthorized disinterment of the decedent's body was also held to be actionable (*Gostkowski* v. *Roman Catholic Church*, 262 N. Y. 320). In a leading case, recovery was allowed for emotional distress caused to the parents by reason of a cemetery association having mislaid the body of a stillborn infant which had been turned over to it for burial. (*Klumbach* v. *Silver Mount Cemetery Assn.*, 242 App. Div. 843, affd. 268 N. Y. 525; Note, 21 Cornell L. Q. 166; see, also, *Finley* v. *Atlantic Transp. Co.*, 220 N. Y. 249; *Lubin* v. *Sydenham Hosp.*, 181 Misc. 870.) While these cases arose in connection with the mishandling of a decedent's body at the end of life, their reasoning is equally applicable to the mishandling of an infant's body at the beginning of life.

For another line of cases in which a recovery was allowed for injury to the emotions, with or without consequent physical illness, see the contractual relationship cases, cited *supra*. See, also, the food cases, in which recovery was allowed for nausea caused by the sight of repulsive foreign substances in food

(*Sider* v. *Reid Ice Cream Co.*, 125 Misc. 835; *Carroll* v. *New York Pie Baking Co.*, 215 App. Div. 240; cf. *Barrington* v. *Hotel Astor*, 184 App. Div. 317).

For a long time, these cases were regarded as exceptions to a general rule of nonliability for the negligent causing of emotional distress or mental suffering, but they can no longer be so regarded. The former rule has been repudiated by the *Battalla* case. It is no longer necessary to bring a case of emotional distress within any particular exception. The general rule is now one imposing liability for the negligent causing of emotional distress, subject to such limitations as may hereafter be worked out by the courts. The principal limitation implicit in the *Battalla* decision is that the emotional distress must be of a serious character. Trivial disturbances have to be accepted as part of the wear and tear of everyday life. Of course, the question of the seriousness of the distress cannot be decided upon the face of the complaint but must await the development of the facts upon the trial.

But even if we were to attempt to decide the question upon the face of the complaint, we would have to conclude that the complaint is sufficient to charge serious and severe distress, when read in the light of the authoritative religious writings of which we can take judicial notice. Circumcision of a male child in accordance with the ritual prescribed by the Jewish religion is an act of the greatest importance to Orthodox Jewish parents. For an Orthodox Jewish father, the duty to have his son properly circumcised is one of the highest duties imposed by Jewish religious law. Circumcision is so sacred a ritual that the circumcision is permitted to be performed on a Saturday if the eighth day falls on that day, notwithstanding the prohibition of work on the Sabbath. (Maimonides' Code, Book II [Hyamson translation] p. 162-a.)

The ritual of circumcision is a token of the covenant between God and Abraham. Its observance is divinely commanded in Genesis, Chapter 17, verses 9 to 12 (Masoretic Text, Jewish Publication Society translation) in these terms: "And God said unto Abraham: 'And as for thee, thou shalt keep My covenant, thou, and thy seed after thee, throughout their generations. This is My covenant, which ye shall keep, between Me and you and thy seed after thee; every male among you shall be circumcised. And ye shall be circumcised in the flesh of your foreskin; and it shall be a token of the covenant betwixt Me and you. And he that is eight days old shall be circumcised among you, every male throughout your generations. . .'"

The ceremony of circumcision is an elaborate one. It is to be performed by a specially qualified person who is to recite a prescribed prayer. The father and others present also recite prescribed benedictions or blessings. (Maimonides' Code, *supra*, pp. 164-a to 164-b; Gottlieb, A Jewish Child is Born, pp. 45–46, and Finkelstein, *op. cit. supra*, p. 1376.)

The emotional distress and mental suffering of the plaintiffs resulting from the defendants' action in causing the plaintiffs' son to be circumcised in a manner violating the fundamental tenets of their faith was obviously of a serious character.

This case does not involve the question of the right of a plaintiff to recover for emotional distress caused by the witnessing of the infliction of an injury upon a third person or caused by hearing an account of such an injury. The impact of the *Battalla* decision upon that type of case is still to be determined. Here the claim is for the infliction of emotional distress by the defendants directly upon the plaintiffs themselves by an act violating their religious beliefs. The cause of action is not for the injury to the child but for the direct injury to the plaintiffs.

It is argued that no recovery should be allowed in this type of case because the violation of religious convictions cannot be compensated by a money pay-

ment but it is equally true of all awards for pain and suffering, either physical or mental, that money damages cannot compensate for the pain. So long as we have a system in which compensation is awarded for pain and suffering, an award should not be denied in this type of case because of the obvious inadequacy of money compensation to rectify the wrong. Furthermore, the award of damages has an admonitory as well as a compensatory purpose. If the allegations of the complaint are sustained upon the trial and an award is made to the plaintiffs, it will have the effect of impressing upon the defendants the importance of exercising care in situations of this kind and it may lead to the avoidance of the infliction of similar emotional distress upon others. As Judge FULD pointed out in a different context, with respect to an award of damages against a hospital: " Insistence upon  *  *  *  damages for negligent injury serves a twofold purpose, for it both assures payment of an obligation to the person injured and gives warning that justice and the law demand the exercise of care " (*Bing* v. *Thunig*, 2 N Y 2d 656, 666).

I would therefore reverse the order appealed from and deny the motion to dismiss the complaint.

Present — Williams, P. J., Bastow, Goldman, Halpern and McClusky, JJ.

Order insofar as appealed from affirmed, without costs of this appeal to either party. [31 Misc 2d 18.]