Le Mistral, Inc., Appellant-Respondent, et al., Plaintiff, v Columbia Broadcasting System, Respondent-Appellant, et al., Defendants.

First Department, March 2, 1978

## APPEARANCES OF COUNSEL

*Roy M. Cohen* of counsel *(John F. Lang* with him on the brief; *Saxe, Bacom & Bolan, P. C.,* attorneys), for appellant-respondent.

*Carleton G. Eldridge, Jr.,* of counsel *(Gordon T. King, Pamela G. Ostrager* and *Ronald E. Guttman* with him on the brief; *Coudert Brothers,* attorneys), for respondent-appellant.

**OPINION OF THE COURT**

LUPIANO, J.

Defendant Columbia Broadcasting System in its capacity as owner and operator of Television Channel 2 in New York, on July 6, 1972, directed defendant Lucille Rich, its employee, and a camera crew to visit a number of restaurants which had been cited for health code violations by the Health Services Administration of New York City. Plaintiff restaurant was on the list. The camera crew and Ms. Rich entered the restaurant at approximately 2:00 P.M. with the camera working ("rolling"), which necessitated the utilization of bright lights for filming purposes. After entering the premises in this fashion, Ms. Rich and the camera crew were commanded to leave by plaintiff's president. It appears that these CBS employees were on the premises for a period of time during which the camera continued to roll. Plaintiff, insofar as its action for trespass is concerned, was awarded compensatory and punitive damages by a jury. The trial court on defendant CBS's motion upheld the jury verdict in finding that the conduct of this defendant constituted a trespass, but set aside the damage awards.[1]

■ Initially, we are confronted with defendant CBS's claim that despite the tort committed, defendant is insulated from

---

1. The trial court pertinently observed: "The instructions given to the crew, whether specific to this event or as standing operating procedure, were to avoid seeking an appointment or permission to enter any of the premises where a story was sought, but to enter unannounced catching the occupants by surprise; 'with cameras rolling' in the words of CBS' principal witness, Rich. From the evidence the jury was entitled to conclude that following this procedure the defendant's employees burst into plaintiff's restaurant in noisy and obstrusive fashion and following the loud commands of the reporter, Rich, to photograph the patrons dining, turned their lights and camera upon the dining room. Consternation, the jury was informed, followed. Patrons waiting to be seated left the restaurant. Others who had finished eating, left without waiting for their checks. Still others hid their faces behind napkins or table cloths or hid themselves beneath tables. (The reluctance of the plaintiff's clientele to be video taped was never explained, and need not be. Patronizing a restaurant does not carry with it an obligation to appear on television). [The] president of the plaintiff and manager of its operations, refused to be interviewed, and as the camera continued to 'roll' he pushed the protesting Miss Rich and her crew from the premises. All told, the CBS personnel were in the restaurant not more than ten minutes, perhaps as little as one minute, depending on the testimony the jury chose to credit. The jury by its verdict clearly found the defendant guilty of trespass and from the admissions of CBS' own employees they were guilty of trespass. The witness, Rich sought to justify her crew's entry into the restaurant by calling it, on a number of occasions, a 'place of public accommodation', but, as she acknowledges, they did not seek to avail themselves of the plaintiff's 'accommodation'; they had no intention of purchasing food or drink."

any damage award by virtue of the First Amendment to the United States Constitution. Clearly, the First Amendment is not a shibboleth before which all other rights must succumb. This court "recognizes that the exercise of the right of free speech and free press demands and even mandates the observance of the coequal duty not to abuse such right, but to utilize it with right reason and dignity. Vain lip service to 'duties' in a vacuous reality wherein 'rights' exist, sovereign and independent of any balancing moral or social factor, creates a semantical mockery of the very foundation of our laws and legal system" (*Bavarian Motor Works v Manchester,* 61 Misc 2d 309, 311). In *Dietemann v Time, Inc.* (449 F2d 245, 249) it was observed that "[t]he First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering. The First Amendment is not a license to trespass". Similarly, the Second Circuit Court of Appeals in *Galella v Onassis* (487 F2d 986, 995-996) stated: "Crimes and torts committed in news gathering are not protected. *See* Bransburg v. Hayes, 408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed.2d 626 (1972); Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Dietemann v. Time, Inc., 449 F.2d 245, 249-250 (9th Cir. 1971). *See* Restatement of Torts 2d § 652(f), comment k (Tent. Draft No. 13, 1967). There is no threat to a free press in requiring its agents to act within the law."

 Scrutiny of the record demonstrates an adequate basis to justify the compensatory damage award rendered by the jury and, accordingly, such award must stand. Regarding punitive damages, it is well recognized that such damages "are penal in their nature and are different, both in nature and purpose, from compensatory damages. Such damages are allowed in addition to compensatory damages, and are awarded upon public consideration as a punishment of the defendant for the wrong in the particular case, and for protection of the public against similar acts, to deter the defendant from a repetition of the wrongful act, and to serve as a warning to others" (14 NY Jur, Damages, § 176). "As a general rule, exemplary damages are recoverable in all actions ex delicto based upon tortious acts which involve ingredients of malice, fraud, oppression, insult, wanton or reckless disregard of the plaintiff's rights, or other circumstances of aggravation, as a punishment of the defendant and admonition to others * * * Punitive damages have been allowed in actions for

trespass" (14 NY Jur, *supra,* § 180). The award of punitive damages under circumstances warranting the allowance of same rests in the discretion of the jury, or in the court where the case is tried without a jury. The basis for an award of exemplary damages depends upon a showing that the wrong is aggravated by evil or a wrongful motive or that there was willful and intentional misdoing, or a reckless indifference equivalent thereto.

■ The trial court in setting aside the jury award of punitive damages, did so because of its exclusion of certain testimony by defense witness Dessartz relevant to defendant CBS's motive and purpose in entering the plaintiff's premises unannounced "with cameras rolling." The court noted: "As punitive damage involves malice, evidence of motivation and purpose are admissible, at least in mitigation of damages." As recovery of punitive damages depends upon the defendant acting with evil or wrongful motive or with a willful and intentional misdoing, or with a reckless indifference equivalent thereto, "[a]ll * * * cirucmstances immediately connected with the transaction tending to exhibit or explain the motive of the defendant are admissible" (14 NY Jur, *supra,* § 189).[2] Defendant CBS was entitled to demonstrate and explain its motive and the curtailment of this right by the trial court mandates retrial of the punitive damage issue.

Accordingly, the order of the Supreme Court, New York County (STECHER, J.), entered January 19, 1977 which vacated the jury's award of $1,200 in compensatory damages and $250,000 in punitive damages and directed a new trial on the issue of damages, should be modified, on the law, to the extent of reinstating the jury's award of compensatory damages, severing the claim to punitive damages and remanding the matter for a trial on the issue of punitive damages, and as so modified, should be affirmed, without costs and without disbursements.

MURPHY, P. J. (dissenting in part). While I agree with the majority that defendant CBS committed a trespass and is accountable in compensatory damages therefor, I would not award punitive damages on the particular facts in this case. It is clear from the record that, in dispatching reporters to

---

2. In *Voltz v Blackmar* (64 NY 440, 445) the Court of Appeals declared: "Where exemplary or punitive damages are claimed, all the circumstances immediately connected with the transaction, tending to exhibit or explain the motive of the defendant, are admissible in evidence."

plaintiff restaurant, defendant was not motivated by actual malice or such an intentional disregard of plaintiff's rights as would justify the imposition of punitive damages (87 CJS, Trespass, § 112, p 1068). The defendant was merely pursuing a newsworthy item in the overly aggressive but good faith manner that characterizes the operation of the news media today. To the date of this opinion, it may be safely said that the news media has rarely been taken to task for the type of unwarranted intrusion presented in this proceeding. (See, generally, 28 ALR Fed 904, First Amendment as Immunizing Newsman from Liability for Tortious Conduct While Gathering News.) In this sensitive and evolving First Amendment area, I would permit this precedent-setting opinion to stand as a warning to all news gatherers that future trespasses may well be met with an award of punitive damages (cf. *Dietemann v Time, Inc.,* 284 F Supp 925, 932, affd 449 F2d 245).

LANE, MARKEWICH and SANDLER, JJ., concur with LUPIANO, J.; MURPHY, P. J., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on January 19, 1977, modified, on the law, to the extent of reinstating the jury's award of compensatory damages, severing the claim to punitive damages and remanding the matter for a trial on the issue of punitive damages and, as so modified, affirmed, without costs and without disbursements.