**In re John D. BAKER a/k/a J. David Baker, Debtor.**

**LINCOLN FIRST BANK OF ROCHESTER, N. A., Plaintiff,**

v.

**John D. BAKER, a/k/a J. David Baker, Defendant.**

**Bankruptcy No. 81–20185.**

United States Bankruptcy Court, W. D. New York.

March 9, 1982.

Nixon, Hargrave, Devans & Doyle by Gregory J. Murrer, Rochester, N. Y., for plaintiff.

John V. Shepard, Rochester, N. Y., for defendant.

MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

On October 29, 1980, Lincoln First Bank, hereinafter called "Lincoln", commenced an action in the City Court, City of Rochester, against defendant for the balance due on an

installment promissory note (Note). The Note was executed by defendant on November 11, 1977, in the amount of $7,463.88 and provided for repayment in thirty-six (36) monthly installments of $207.33 commencing January 5, 1978. Each payment was to be made on the fifth day of each month.

On or about November 12, 1980, defendant served his answer with affirmative defense and counterclaim. By his answer, defendant alleged Lincoln's violation of Articles 29–H and 34 of the General Business Law of New York and harassment of defendant causing physical and mental distress to defendant. Defendant claims damages of $100,000.

On February 8, 1981, defendant filed a petition with the United States Bankruptcy Court for the Western District of New York (Bankruptcy Court), pursuant to Chapter 13 of the United States Bankruptcy Code. On August 13, 1981, on motion of counsel to Lincoln, the Bankruptcy Court directed defendant to amend his petition to include defendant's counterclaim as a contingent, unliquidated asset of defendant's estate.

On August 27, 1981, upon application of Lincoln, this action was removed from the City Court, City of Rochester, to the Bankruptcy Court.

On November 6, 1981, trial of this action was held before the Bankruptcy Court. Lincoln's prima facie case upon defendant's underlying debt was stipulated by counsel and proof of the amount of the debt was offered. This proof showed the debt to be $1601.38 if paid off on August 26, 1980.

Mr. Baker's counterclaim is one for intentional infliction of emotional distress. This cause of action was first recognized in New York as an independent tort in the case of *Halio v. Lurie,* 15 A.D.2d 62, 222 N.Y.S.2d 759 (Second Dept. 1961) and was extended to the debtor-creditor context in *Long v. Beneficial Finance Company,* 39 A.D.2d 11, 330 N.Y.S.2d 664 (4th Dept. 1972).

The theory adopted by the New York Courts is that formulated by the Restatement, Torts 2d 846. *Fischer v. Maloney,* 43

N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978); *Nestlerode v. Federal Ins.,* 66 A.D. 504, 414 N.Y.S.2d 398 (4th Dept. 1974). The theory is that:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." (§ 46 subd. [1]).

The *Fischer* court noted 43 N.Y.2d at page 557, 402 N.Y.S.2d 991, 373 N.E.2d 1215:

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

This tort theory was late in developing because the court saw the danger of vexatious and fictitious claims. "Mental disturbance is easily simulated and courts which are plagued with fraudulent personal injury claims may well be unwilling to open the door to an even more dubious field." *Ferrara v. Galluchio,* 5 N.Y.2d 16, 176 N.Y.S.2d 996, 152 N.E.2d 249.

Therefore, when the cause of action for infliction of mental distress was adopted, a very heavy burden of proof was imposed upon the plaintiff. The acts complained of must have been "outrageous" and "beyond all possible bounds of decency". Negligence was not enough. Gross negligence would not do. The acts must be "utterly intolerable in a civilized community".

"Even if [defendant] was aware of some peculiar susceptibility of [plaintiff] to emotional distress by reason of his physical or mental condition, the conduct must still be outrageous to be actionable. It must consist of more than mere insults, indignities, and annoyances . . ."

*Nestlerode v. Federal Ins.,* 66 A.D.2d 504, 507, 414 N.Y.S.2d 398.

In determining whether a defendant's conduct is "outrageous", courts have looked for "evidence that the defendant conducted a planned program of harassment or threats". *Nestlerode, supra,* page

507, 414 N.Y.S.2d 398: or of "a deliberate and malicious campaign of harassment or intimidation". *Nader v. General Motors*, 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 255 N.E.2d 765. Abusive, obscene and threatening phone calls can provide the basis for a finding of outrageous conduct. *Callarama v. Associates Discount Corp.*, 69 Misc.2d 287, 329 N.Y.S.2d 711 (Sup.Ct. Monroe Co. 1972). The nature of a defendant's conduct is the focal point in an action for the intentional infliction of emotional distress. For if the conduct is found to be outrageous, intentional, then causation and damage are virtually presumed.

Malice in the sense of ill will or a desire to cause injury is not essential to sustain a recovery for intentional wrongdoing. "It is enough for the plaintiff to show that a defendant knowingly and intentionally did the act which caused the damage and that the damage was substantially certain to follow". *Kalina v. General Hosp. of City of Syracuse*, 18 A.D.2d 757, 758, 235 N.Y.S.2d 808. Furthermore, where an actor's conduct is intentional and it causes severe mental distress, it is not a defense that the victim of the wrong was particularly susceptible to the injury and that the actor did not know of the susceptibility. *Clark v. Association of Retail Credit Men*, 105 F.2d 62 (3rd Cir.). Finally, damages can be presumed to result from the intentional invasion of a protected right. When the emotional distress alleged to have been suffered is the sort that would be experienced by reasonable people under the circumstances, some damage, even if merely nominal damage, can be presumed. *Birnbaum v. United States*, 436 F.Supp. 967, (D.C.Cir.) affd. 588 F.2d 319 (2d Cir. 1978). The extent of plaintiff's injury can be proved by plaintiff's testimony alone. (See *Id.* at 335; see also, *Ferrara v. Galluchio*, 5 N.Y.2d 16, 22, 176 N.Y.S.2d 996, 152 N.E.2d 249 (1958)). It should also be noted that even if a plaintiff suffers only nominal damage, willful and intentional misdoing may be the basis for an award of punitive damages. *Le Minstrall v. CBS*, 61 A.D.2d 491, 402 N.Y.S.2d 815.

In the case at bar, the debtor was delinquent in his account with Lincoln making his payments late from the initiation of the account. At some point in time, he was as much as sixty days late. Lincoln had a collection procedure which they used in all cases and which they used in this case.

When an account became delinquent, telephone calls were placed to the debtor at his home and at his place of business. Form letters were sent to the delinquent debtor, personal calls were made on the debtor and finally if collection was not made, the case was turned over to Lincoln's lawyer for collection action. Lincoln proceeded in this fashion against Mr. Baker.

Mr. Baker testified that throughout the period of August, 1978 to 1980 Lincoln's employees made a hundred to hundred twenty telephone calls to Mr. Baker, to his family and employees concerning the account. He testified that a representative of the bank, dressed in a black leather jacket, came to his office on two occasions, that this person acted in a threatening way, showed identification and claimed that he was a law enforcement officer and informed Baker's employees that he was from the enforcement division of Lincoln First Bank. Baker testified that he forced him to leave his office by threatening to call the police. Baker further testified that a dozen collection notices were sent to his home and office on different occasions. That these were calculated to embarrass him and they did.

He testified that the manager of the bank came to see him on two occasions concerning accounts due the bank. He testified that the bank sent him a collection notice for an account that was not his and refused to discuss this matter with him. He said that Lincoln refused to supply him with a reconciliation of his account and that Lincoln refused to reconcile the dispute. He testified that Lincoln threatened to sue and did in fact sue him. Defendant claims that by the refusal of the plaintiff to settle, he was required to wait until Lincoln sued him and counterclaim for damages. This resulted in him being nervous, upset, caused

diarrhea and made him unable to perform his daily work tasks and that he suffered emotional instability as a result of Lincoln's acts.

On cross-examination, Baker admitted that at the time that he was allegedly being hounded by Lincoln's collection efforts, he was having trouble with the Appellate Division over his handling of a surrogate matter as an executor for an estate and that subsequently he was suspended from the practice of law for a minimum of two years. He also admitted that at the same time, he was having matrimonial problems with his wife.

The bank's employees testified that they had made numerous phone calls to Baker and that they wrote numerous letters to Baker in an attempt to bring the account in question current. They did admit that on one occasion they sent a collection notice on the wrong account to Baker. The bank employee who had visited Baker's office testified that he had visited the office on two occasions in an attempt to talk to Baker about his delinquent account. On the first occasion, Baker refused to see him and on the second occasion, he did talk to Baker. One of the other bank employees testified to several telephone conversations with Baker relative to alleged errors in the account. He concluded that Lincoln's position was correct and acknowledged that he did refuse on one occasion to spend the time to reconcile the account against Baker, because Baker refused to tell him in what respects Lincoln's position was wrong.

On the basis of the testimony summarized above, it would appear that Lincoln was not guilty of outrageous, atrocious and indecent conduct in the pursuit of their collection efforts against Baker. A creditor does have a right to pursue a delinquent account. While Baker may have been nervous, upset, having diarrhea and been unable to perform his daily work tasks and while he may have suffered certain emotional instability, these all might have been attributable to his troubles with the Appellate Division or his family troubles rather than to the collection actions of Lincoln. Baker has failed to prove any causal connection between Lin-

coln's actions and his illness. It should also be noted that no medical evidence was given to show his illness did exist.

Therefore, it is the decision of this Court that Lincoln is entitled to a claim in this estate and a judgment against Baker in the amount of $1,601.38 with interest from August 26, 1980 together with the costs and disbursements of this action and an order dismissing Baker's counterclaim for failure of proof. It is so ordered.