OPINION OF THE COURT
Kaye, J.
The parents of a newborn infant abducted from a hospital nursery may not recover damages from the hospital for their own emotional distress resulting from the hospital’s negligence in its care of their child or in the management of its nursery. Plaintiffs’ complaint for such damages should have been dismissed for failure to state a cause of action.
Plaintiffs, Cynthia Johnson and Percy Williams, are the parents of a daughter, Kawana, born June 8, 1981 in defendant Jamaica Hospital. After Cynthia’s discharge, the infant remained in the hospital nursery for further treatment. When Cynthia visited on June 16,1981 — a day on which defendant had received two bomb threats — it was discovered that Kawana was missing. She apparently had been abducted from the nursery that day. She was recovered by the police and returned to her parents approximately four and one-half months later. A separate action for damages has been commenced against defendant on her behalf, which is not a part of this appeal.
Prior to Kawana’s recovery, plaintiffs instituted the present action. In their first cause of action, plaintiffs allege that they are Kawana’s parents, that she was in defendant’s care and custody for treatment, that she disappeared during that time and defendant had been unable to account for her disappearance, and that they have suffered grief, mental torment, pain and anguish as a result of defendant’s negligence in failing “to exercise due and proper care and caution in its custody, care and treatment of * * * Kawana.” Plaintiffs’ second cause of action, based *526 upon the doctrine of res ipsa loquitur, repeats these aver-ments and concludes that “the occurrence alleged would not have taken place in the ordinary course of things if the defendant had not negligently failed to use proper care in the direction, control, management and maintenance of said hospital nursery, which was under the exclusive control, direction, management and maintenance of the defendant.”
After interposing an answer, defendant moved to dismiss the complaint for failure to state a cause of action. Special Term denied defendant’s motion, and the Appellate Division affirmed by a divided court. Defendant was granted leave to appeal to this court by the Appellate Division, which certified the question whether its order affirming the denial of defendant’s motion was properly made. We now reverse.
Assuming the allegations of plaintiffs’ complaint to be true (Cohn v Lionel Corp., 21 NY2d 559, 562), no cause of action is stated. Plaintiff parents may not recover damages from defendant hospital for any mental distress or emotional disturbances they may have suffered as a result of the direct injury inflicted upon their daughter by defendant’s breach of its duty of care to her. (Howard v Lecher, 42 NY2d 109, 113; Becker v Schwartz, 46 NY2d 401, 413; Vaccaro v Squibb Corp., 52 NY2d 809, 810.) Although in Bovsun v Sanperi (61 NY2d 219) we recently decided that damages may be recovered for such indirect “psychic injuries” in limited circumstances, plaintiffs have stated no basis for recovering under the standard set forth in Bovsun in that they have not alleged that they were within the zone of danger and that their injuries resulted from contemporaneous observation of serious physical injury or death caused by defendant’s negligence.
Plaintiffs contend, and the courts below concluded, that their complaint states a cause of action because the defendant hospital owed a duty directly to them, as parents, to care properly for their child, and that it was or should have been foreseeable to defendant that any injury to Kawana, such as abduction, would cause them mental distress. There is no basis for establishing such a direct duty. This court has refused to recognize such a duty on the part of a *527 hospital to the parents of hospitalized children (Kalina v General Hosp., 13 NY2d 1023), and there is no reason to depart from that rule here.
In Kalina, the plaintiffs, an observant Jewish couple, gave express instructions to the defendant hospital that their newborn son was to be ritualistically circumcised on his eighth day by a mohel in accordance with the tenets of their religion. Instead, due to the alleged negligence and malpractice of the hospital, the baby was circumcised on his fourth day by a physician. The plaintiff parents sought recovery for their mental pain and suffering caused by the assault and battery upon their son. Special Term granted defendants’ motion to dismiss the complaint (31 Misc 2d 18) and we ultimately affirmed on Special Term’s opinion. In that opinion, the parents of the hospitalized child were held to be “interested bystanders” to whom no direct duty was owed.
“Both of the pleadings are insufficient because the plaintiffs as individuals, apart from their status as representatives of their son, do not have a legally protected interest under these circumstances (Palsgraf v. Long Is. R.R. Co., 248 N. Y. 339). To paraphrase the language of Palsgraf, at page 341 — the conduct of the defendants, if a wrong in relation to the son, was not a wrong in its relation to the plaintiffs, remote from the event. Rights are not abstractions but exist only correlatively with duties. Everyone who has been damaged by an interruption in the expected tenor of his life does not have a cause of action. The law demands that the equation be balanced; that the damaged plaintiff be able to point the finger of responsibility at a defendant owing, not a general duty to society, but a specific duty to him.
“The defendants here in accepting a relationship with the son assumed the risk of liability for a tortious performance to him. They did not assume any risk of liability that their acts might violate the personal sensibilities of others, be they the son’s parents, his coreligionists or the community at large.” (Kalina v General Hosp., 31 Misc 2d 18, 19, affd 18 AD2d 757, affd 13 NY2d 1023.)
Jamaica Hospital owed no more of a direct duty to the plaintiff parents to refrain from causing them psychic *528 injury than did the defendants in Kalina, Howard, Becker and Vaccaro. The direct injury allegedly caused by defendant’s negligence — abduction — was sustained by the infant, and plaintiffs’ grief and mental torment which resulted from her disappearance are not actionable. The foreseeability that such psychic injuries would result from the injury to Kawana does not serve to establish a duty running from defendant to plaintiffs (Albala v City of New York, 54 NY2d 269, 273; Pulka v Edelman, 40 NY2d 781, 785), and in the absence of such a duty, as a matter of law there can be no liability (De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055). That sound policy reasons support these decisions is evident here, for to permit recovery by the infant’s parents for emotional distress would be to invite open-ended liability for indirect emotional injury suffered by families in every instance where the very young, or very elderly, or incapacitated persons experience negligent care or treatment.
There is, similarly, no basis for establishing such a duty in the contractual relationship between plaintiffs and defendant, or in the assertion that defendant was standing in loco parentis, or in our prior decisions in Johnson v State of New York (37 NY2d 378) and Lando v State of New York (39 NY2d 803).
There is no foundation for the alleged duty in the contractual relationship between plaintiffs and defendant, wherein plaintiffs agreed to compensate defendant for services rendered to their daughter. The general rule in contract cases is that “absent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty.” (Wehringer v Standard Security Life Ins. Co., 57 NY2d 757, 759.) Although some exceptions to this rule have been recognized, such as wrongful and abusive ejection by a hotel or innkeeper (Boyce v Greely Sq. Hotel Co., 228 NY 106; DeWolf v Ford, 193 NY 397), indignant expulsion or removal from a public facility (Aaron v Ward, 203 NY 351; Smith v Leo, 92 Hun 242), or ejection by a common carrier (Gillespie v Brooklyn Hgts. R.R. Co., 178 NY 347; Hamilton v Third Ave. R.R. Co., 53 NY 25), they are not applicable here.
*529 “In nearly every case where such damages have been awarded, the breach has been wilful; and in many of them the ejection of the plaintiff was accompanied by wanton conduct, such as foul language, abuse of the plaintiff, accusations of immorality, and special circumstances of humiliation and indignity. Where there were no such accompanying facts, damages for mental suffering have usually been refused.” (5 Corbin, Contracts, § 1076, p 432; see, also, 36 NY Jur 2d, Damages, § 102; Restatement, Contracts 2d, § 353.)
A similar contractual duty was suggested by the Appellate Division dissenter in Kalina v General Hosp. (18 AD2d 757, 758, supra), but was not adopted by this court.
Nor can a duty to refrain from causing plaintiffs emotional distress be predicated on any notion that defendant stood in loco parentis while caring for the infant. First, there is no basis for a finding that defendant stood in loco parentis. That status requires more than mere temporary care and custody; an intent to support and care for the child on a permanent basis must be shown. (Rutkowski v Wasko, 286 App Div 327, 331-332; 15 NY Jur [rev 1972], Domestic Relations, § 336.) A finding that one stands in loco parentis cannot be based solely upon a relationship where, as here, one is compensated for providing services to a child. (See Miller v Davis, 49 Misc 2d 764 [Jasen, J.].) There are no allegations in plaintiffs’ complaint to support the conclusion that defendant, at the time of the abduction, stood in loco parentis. Second, one in loco parentis assumes duties to the child, not to the child’s parents. Third, it is doubtful that even the child involved would have a cause of action against one in loco parentis for action that, as alleged here, amounted to negligent supervision. (See Holodook v Spencer, 36 NY2d 35.) In short, the contention that defendant Jamaica Hospital stood in loco parentis to Kawana — not even asserted by plaintiffs in their complaint, but made by the Appellate Division — adds nothing to plaintiffs’ claims.
Finally, our prior holdings in Johnson v State of New York (37 NY2d 378, and Lando v State of New York (39 NY2d 803, supra) provide no basis for recovery. In neither case was liability based upon a hospital’s breach of care to its patient causing direct injury to the patient *530 resulting in emotional injury to relatives of the patient. In Johnson the defendant hospital negligently sent a telegram to plaintiff notifying her of her mother’s death when in fact her mother had not died, and in Lando the defendant hospital negligently failed to locate a deceased patient’s body for 11 days, when it was found in an advanced state of decomposition. Each case presented exceptional circumstances in which courts long ago recognized liability for resultant emotional injuries: a duty to transmit truthfully information concerning a relative’s death or funeral (Johnson v State of New York, 37 NY2d 378, 381-382, supra), which the hospital assumed by sending the message (Lafferty v Manhasset Med. Center Hosp., 54 NY2d 277, 280), and the mishandling of or failure to deliver a dead body with the consequent denial of access to the family (Finley v Atlantic Transp. Co., 220 NY 249; Darcy v Presbyterian Hosp., 202 NY 259). Neither exception is applicable here.
In summary, Jamaica Hospital, even if negligent in caring for Kawana and directly liable to her, is not liable for emotional distress suffered by plaintiffs as a consequence of the abduction. This is in accord with the majority rule in this country. (Recovery for Mental or Emotional Distress Resulting From Injury to, or Death of, Member of Plaintiff’s Family Arising From Physician’s or Hospital’s Wrongful Conduct, Ann., 77 ALR3d 447.) There is no duty owing from defendant to plaintiffs to refrain from negligently causing such injury. To hold otherwise would be to invite the very sort of boundless liability for indirect emotional injury that we have consistently rejected.
The dissent would reach the opposite result, based on its own policy determination that defendant rather than plaintiffs should be required to bear the burden of plaintiffs’ psychic injury. The dissent argues that our prior decisions have recognized that an action should lie for any infringement of parents’ right to custody “if liability could but be circumscribed”, and that this case presents such an opportunity, as this is not a common occurrence and the class of persons permitted to recover is sufficiently limited (dissent, at pp 533, 534). While disagreeing with the dissent’s policy determination, we additionally point out that the cited authorities do not support the proffered result.
*531 The suggestion that liability would be severely limited is also without foundation. Just as it is now suggested that Bovsun v Sanperi (61 NY2d 219, supra) marks the beginning of a rationale (dissent, at p 532), any right to recover for emotional injury sustained by plaintiffs because of defendant’s negligence in the “care, custody and management” of their child cannot rationally be refused to other parents, relatives or custodians of persons to whom caretakers of various types, such as schools and day care centers, are alleged to have breached a similar duty. In considering a new duty, the court’s concern for its ramifying consequences should hardly be disparaged (dissent, at *532 p 532). Not every injury can be compensated, and “[t]he problem for the law is to limit the legal consequences of wrongs to a controllable degree.” (Tobin v Grossman, 24 NY2d 609, 619, supra.)
Accordingly, the order of the Appellate Division should be reversed, the certified question answered in the negative, and the complaint dismissed.
The zone of danger concept rejected by Tobin (id., at p 616) was accepted by Bovsun, in part because it limited recovery not only to those within the zone of danger, but also to members of the immediate family of the person injured or killed (61 NY2d, at pp 229, 230, 231, 232) who had themselves suffered a serious and verifiable emotional disturbance (id., at p 231). But Bovsun’s adoption of the zone of danger concept need not, and should not, be read as barring recovery by parents who suffer serious and verifiable emotional injury as the result of the negligent infringement by a hospital of the parents’ right to custody of their child, even though the parents are not within the zone of danger when the infringement occurs. In my view the *533 parental right to custody is sufficiently distinct from physical injury to or death of a child, the class of persons permitted to recover sufficiently limited, and the psychological trauma to the parents resulting from infringement of their custodial rights is direct rather than consequential and sufficiently probable in human experience that they should be permitted to recover upon proof of a serious and verifiable emotional disturbance. I, therefore, respectfully dissent.
The question to be decided on a motion to dismiss for failure to state a cause of action is whether any valid cause of action can fairly be gathered from the allegations of the complaint (Condon v Associated Hosp. Serv., 287 NY 411, 414). The “sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail” (Guggenheimer v Ginzburg, 43 NY2d 268, 275; accord 219 Broadway Corp. v Alexanders, Inc., 46 NY2d 506, 509). It is, therefore, irrelevant that the complaint is framed in terms of negligence rather than negligent infringement of the parents’ right to custody.
The majority finds no direct duty on the part of the hospital to plaintiffs to refrain from causing them psychic injury. But, as Professor Prosser pointed out (and as we in De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055, agreed), duty “is a shorthand statement of a conclusion, rather than an aid to analysis itself. It * * * is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection” (Prosser, Torts [4th ed], pp 325-326). The policy determination to be made may be stated as whether the interests of plaintiffs and defendant and the relationship between them are such that defendant rather than plaintiffs should be required to bear the burden of plaintiffs’ psychic injury.[1]
*534 The parents’ interest in the care, custody and management of their child is recognized as not only a constitutional fundamental (Santosky v Kramer, 455 US 745, 753) and as a statutory imperative (Social Services Law, § 384-b, subd 1, par [a], cl [ii]), but also by our prior decisions as a real and genuine interest deserving of protection if liability could but be circumscribed in a manner consistent with reason and practicality (Howard v Lecher, 42 NY2d 109, 112; Tobin v Grossman, 24 NY2d 609, 615, supra; see De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055, supra; Johnson v State of New York, 37 NY2d 378, 382-383; Pickle v Page, 252 NY 474, 477).
The hospital’s interest is in not being burdened with unwarranted controls in order to avoid liability and not having to pay damages for what may be a feigned injury or to so large a group of plaintiffs as to impose upon it a burden disproportionate to its negligent act. Because the matter arises on a motion to dismiss for failure to state a cause of action, plaintiffs’ allegations of negligence on defendant’s part must be accepted as true. There is, therefore, nothing before the court to indicate what, if any, change in hospital procedures would be required were there imposed upon it a duty to exercise reasonable care not to permit a newborn baby to be removed from the hospital by someone other than the parents or a person having the parents’ permission to do so, or how great a burden in time or cost such a duty would impose. Clearly, however, it cannot simply be presumed that the burden would be so great as to foreclose imposition of liability, the more particularly so in view of the fact that it is a matter of common knowledge that hospitals already have a checkout procedure.
From the hospital’s side, then, the policy considerations are reduced to the amorphous character of mental distress and the limitation of the class of plaintiffs. The first is, however, answered by Bovsun’s requirement of serious and verifiable emotional disturbance,[2] and the second by the *535 limitation of the right of recovery to the parents, the only persons with whom the hospital has a relationship from which springs the duty of reasonable care.[3]
With respect to the relationship between plaintiffs and defendant hospital, the majority acknowledges the contract relationship between the parties but concludes that it provides no foundation for recovery for mental distress. Yet there is ample authority that interference by third persons with the parents’ custody of their child is an actionable tort for which damages for mental distress may be recovered (Pickle v Page, 252 NY 474, supra; Lisker v City of New York, 72 Misc 2d 85; see McGrady v Rosenbaum, 62 Misc 2d 182, affd 37 AD2d 917). Recovery by parents for mental distress has also been sanctioned when a hospital entrusted with the care of a child refuses to deliver to the parents the body of the child after its death (Darcy v Presbyterian Hosp., 202 NY 259; Hassard v Lehane, 143 App Div 424; Lubin v Sydenham Hosp., 181 Misc 870), for the hospital’s method of informing the parents of the death of their baby and its failure to locate the baby’s body or confirm its death for a period of three weeks (Muniz v United Hosps. Med. Center Presbyt. Hosp., 153 NJ Super 79), for the hospital’s refusal to release a child to the parents until the hospital’s bill had been paid (Bedard v Notre Dame Hosp., 89 RI 195),[4] and for the loss by a cemetery association of the body of a still-born baby entrusted to it for burial (Klumbach v Silver Mount Cemetery Assn., 242 App Div 843, affd 268 NY 525).
It is not a sufficient answer to suggest that such holdings can be differentiated on the basis that the conduct involved was intentional rather than negligent, for that is but a result-oriented distinction. Prosser (Torts [4th ed], pp 329-330) notes that the older cases required “circumstances of *536 aggravation” in addition to negligence but that the majority of modern cases allow recovery without such circumstances and concludes that “What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. There may perhaps be other such cases. Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there is no essential reason to deny recovery.” There is no difference in plaintiffs’ injury whether defendant’s act be negligent or intentional (Schultz v Barberton Glass Co., 4 Ohio St 3d 131, 135-136; Rodrigues v State of Hawaii, 52 Hawaii 156,171; Goodrich, Emotional Disturbance as Legal Damage, 20 Mich L Rev 497, 504-505; McNiece, Psychic Injury and Tort Liability In New York, 24 St John’s L Rev 1, 63; Note 21 Cornell L Q 166, 170).
Furthermore, the purpose of awarding compensatory damages for a tort is not to punish the wrongdoer but to compensate the person injured. “Punitive damages and damages for wounded feelings, though similar, are not the same” (Gostkowski v Roman Catholic Church, 262 NY 320, 324, supra; see, also, Pickle v Page, 252 NY, at p 475), and moral culpability has nothing to do with the policy considerations which formed the basis of Tobin’s denial of recovery for emotional disturbance (“foreseeability of the injury, proliferation of claims, fraudulent claims, inconsistency of the zone of danger rule, unlimited liability, unduly burdensome liability, and the difficulty of circumscribing the area of liability” [24 NY2d, at p 615]) and, therefore, should have nothing to do with the right of the present plaintiffs to compensatory damages for their mental distress. Particularly is this so when, as here, the injury results not intermediately from physical injury to the child but immediately to the parents from the interference with their right to custody and, therefore, rather than being consequential, as the majority suggests (majority opn, at pp 526, 530) has resulted not from injury inflicted upon Kawana but directly to plaintiffs themselves (Pickle v Page, 252 NY, at p 482; compare Kennedy v McKesson Co., 58 NY2d 500, 506-507).
*537 No more persuasive is the distinction drawn by the majority with respect to mental distress resulting from breach of a contract-related duty. Although the exceptions to which it refers concerned willful or abusive actions of the defendant, the present day concept, as stated in section 353 of the Restatement of Contracts, Second, is that “Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.” Breach of a contract to return to parents the custody of a child entrusted to a hospital for medical care by negligently failing to prevent abduction of the child is, as Tobin and other cases cited in the beginning of this opinion agree, of such a kind that mental distress is a particularly likely result (see Burrus v Nevada-California-Oregon Ry., 38 Nev 156, app dsmd 244 US 103 [breach of contract to transport gravely ill son to hospital]; Sullivan v O’Connor, 363 Mass 579 [disfigurement by plastic surgery necessitating a further operation]).
It is only necessary to note, finally, that Kalina v General Hosp. (13 NY2d 1023) is distinguishable, as is evident from the portion of the Special Term opinion quoted by the majority. No duty was found in Kalina because the hospital had not assumed “any risk of liability that their acts might violate the personal sensibilities of others” (31 Misc 2d 18, at p 19, adopted by this court 13 NY2d, at p 1025), Here, however, the hospital in accepting custody of plaintiffs’ daughter for medical treatment assumed the obligation to return custody to the parents at the end of that treatment and, it is alleged, by negligently failing to protect against the abduction of the child from the hospital, interfered with the custodial rights of the parents.
We have recently recognized in relation to mental distress “that the drawing of any line necessarily differentiates between close cases” (Kennedy v McKesson Co., 58 NY2d, at p 507). But the line should not be arbitrarily or artificially drawn. Where, as here, parents have been subjected by the hospital’s failure to protect their right to custody of their child to the anguish of not knowing for a period of four months where the child was, or whether she was alive or dead, there is a sufficient guarantee of genu *538 ineness and seriousness of their claim to warrant its submission to a trier of fact. To hold under such circumstances that there is no duty “is a pitiful confession of incompetence on the part of courts of justice” (Simone v Rhode Is. Co., 28 RI 186, 195).
Chief Judge Cooke and Judges Jones, Wachtler and Simons concur with Judge Kaye; Judge Meyer dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order reversed, with costs, complaint dismissed and question certified answered in the negative.

. The effect on the courts of recognition of such a right is not considered, it being “the business of the law to remedy wrongs that deserve it, even at the expense of a ‘flood of litigation’ ” (Prosser, Torts [4th ed], p 51; Battalla v State of New York, 10 NY2d 237, 241, 242). But the burden should not be great, interference with the right to custody not being a common occurrence (cf. Bovsun, 61 NY2d 219, at p 229), possible plaintiffs being limited to parents and it being required under Bovsun’s rule that there have been serious and verifiable emotional injury.

. (Bovsun does not speak to the presentation of that standard to a jury; but see Rodrigues v State of Hawaii, 52 Hawaii 156, 173; Damages In Tort Actions [Matthew Bender, 1982], § 5.12[1], p 5-18; Nolan & Ursin, Negligent Infliction of Emotional Distress: Coherence Emerging From Chaos, 33 Hastings LJ 583,616; Brody, Negligently Inflicted Psychic Injuries: A Return to Reason, 7 Villanova L Rev 232, 260.)

. Thus, the fear, so many times expressed in Tobin, that the class of plaintiffs was limitless, or at least could not be reasonably contained, is not present in the situation of the instant case. It is, moreover, worth noting that in Gostkowski v Roman Catholic Church (262 NY 320, 325) we upheld a husband’s cause of action against a cemetery for mental distress resulting from removal of his wife’s body from its place of burial, but held the son of decedent to have no cause of action, simply because “In the multitude of such actions there is injustice.”

. Bedard recognized the cause of action but held plaintiff’s complaint insufficient to permit recovery for mental anguish because it did not allege that physical ills followed and that the mental anguish was caused by defendant’s willful and wrongful action.