OPINION OF THE COURT
Raymond E. Cornelius, J.
During the trial of the above-captioned action, the court had previously granted motions for judgment, pursuant to CPLR 4401. Counsel for the plaintiff now objects to a proposed written order, incorporating the court’s decision, to the extent that it provides for payment of costs. The court is requested to find, pursuant to CPLR 8101, that costs would not be equitable under the circumstances of this case. Counsel for the defendant, Rochester General Hospital, takes the position that the mere fact that this case, in part, is one of first impression, does not justify the withholding of costs to which the successful party is otherwise entitled under this section.
The complaint had alleged causes of action for violation of civil rights, false imprisonment, prima facie tort, negligence, intentional infliction of emotional distress, and interference with the custodial relationship of the plaintiffs with their infant child. All of these claims arise from events beginning on March 28, 1988. On that date, plaintiffs, acting on the advice of their pediatrician, took their infant daughter to the Emergency Department of Rochester General Hospital. Based upon X-rays, she was diagnosed as having a fracture of the left femur, which is an unusual injury for a child of approximately five months of age and for which the plaintiffs could offer no explanation. On the following morning, an orthopedic surgeon placed a cast on the child’s leg and advised the parents that the child would be kept in the hospital for observation but could be medically discharged after a period of 24 hours.
The parents were also told by a hospital social worker that a referral would necessarily be made to the Child Protective Ser *645 vices. This social worker, after consultation with her supervisor, made a telephone call to the Child Protective Services "Hotline”, and submitted a written report, as well. She testified that there was an "indication” or "understanding” that the child should be held until Child Protective Services had completed its investigation. Following the referral, Child Protective Services, with the assistance of the local police agency, conducted an investigation, which included interviews with the plaintiffs. Additional X-rays were taken, some without the consent or knowledge of the parents, and at one point, guards were posted at the door of the child’s hospital room based upon an apparent belief that the parents might remove the child from the hospital.
In relevant part, Social Services Law § 417 (2) provides as follows: "the person in charge of any hospital * * * shall, where he has reasonable cause to believe that the circumstances or conditions of the child are such that continuing in his place of residence or in the care and custody of the parent * * * presents an imminent danger to the child’s life or health, take all necessary measures to protect the child including, where appropriate, retaining custody of an abused or maltreated child, until the next regular week day session of the family court in which a child protection proceeding pursuant to article ten of the family court act may be commenced whether or not additional medical treatment is required during that period and whether or not a request is made by a parent or guardian for the return of the child during that period. In all cases where the person in charge of a hospital or similar institution has retained custody of a child pursuant to this section, he shall immediately notify the appropriate local child protective service which immediately shall commence an investigation.”*
Furthermore, Social Services Law § 419 grants immunity from liability to "[a]ny person, official, or institution,” based upon the making of a child protective services report, the taking of photographs or the removal or keeping of a child pursuant to the provisions of that law. However, as set forth in Social Services Law § 417 (2), the authority to retain the child is not indefinite and remains only "until the next regular week day *646 session of the family court”. In addition, the child protective service is mandated to commence such a child protective proceeding at the next regular week day session of the Family Court or recommend to the court that the child be returned to the parents. (Social Services Law § 417 [2].) In the pending case, a proceeding was not commenced until April 1, 1988, some four days following the initial retention of the child. Although no finding ever resulted against the plaintiffs, Family Court initially placed the child in foster care on April 1, 1988, and thereafter, in the custody of the maternal grandmother for a period of time.
This court had granted the motions for judgment during trial, pursuant to CPLR 4401, on various grounds. For instance, plaintiffs failed to establish any proximate cause between the claims of negligence and a viral infection experienced by the child in the hospital. The claims alleging a civil rights violation failed, in part, because Rochester General Hospital is a private institution, and therefore, was not acting under color of State law for purposes of 42 USC § 1983, nor was it shown that it was acting in concert with any State agency in an effort to deprive plaintiffs of their constitutional rights. (See, Miriam P. v City of New York, 163 AD2d 39 [1st Dept 1990].) Further, there was no proof that this five-month-old child was conscious of her confinement, which is one of the essential elements in order to establish a cause of action for false imprisonment. (Miriam P. v City of New York, supra; Parvi v City of Kingston, 41 NY2d 553 [1977]; Broughton v State of New York, 37 NY2d 451 [1975].) Also, plaintiffs could not establish an intention to unlawfully confine the child, which would be necessary to sustain a claim for false imprisonment.
In addition to the foregoing, the defendants were entitled to rely upon immunity from liability, afforded by Social Services Law § 419, and the presumption of good faith, which would have attached to their actions. (See, Dagan v Brookdale Hosp. Med. Ctr., 202 AD2d 385 [2d Dept 1994]; Miriam P. v City of New York, supra.) In this court’s opinion, although apparently not previously decided, the same reasons support dismissal of the cause of action, which this court has construed as alleging interference with the custodial relationship between parents and child.
The tort of the interference with the custodial relationship with a child, based upon which a parent may recover damages for injured feelings, was first recognized in the seminal case of Pickle v Page (252 NY 474 [1930]). This case involved the abduc *647 tion of a child from the natural grandparents, who were also the adopted parents, by a third party acting in concert with one of the natural parents. Courts have generally been reluctant to extend this infrequently invoked theory of recovery to disputes or claims between family members. (See, e.g., Friedman v Friedman, 79 Misc 2d 646 [1974]; McGrady v Rosenbaum, 62 Misc 2d 182 [1970]; Morrow v Yannantuono, 152 Misc 134 [1934].) Conversely, at least in recent years, there has been a recognition that this tort cause of action may be applicable in situations involving claimed wrongful deprivation or detention of a child by an institution having custody of a child. (See, e.g., Adika v County of Rockland, 96 AD2d 1025 [2d Dept 1983]; Lisker v City of New York, 72 Misc 2d 85 [1972]; McEntee v New York Foundling Hosp., 21 Misc 2d 903 [1959].) This was ultimately recognized, although indirectly, by the Court of Appeals, in Johnson v Jamaica Hosp. (62 NY2d 523 [1984].) In this decision, the majority distinguished the facts of that case from "intentional torts such as violent abduction, willful disobedience of a court custody order, and wrongful detention” (supra, at 531), citing Pickle v Page (supra), McGrady v Rosenbaum (supra) and Lisker v City of New York (supra). More recently, in Dunn v Catholic Home Bur. for Dependent Children (142 Mise 2d 316 [1989]), the court denied a motion to dismiss a claim for wrongful deprivation of the custody of an infant child where the plaintiff mother had revoked her consent to surrender the child for adoption and the defendant had apparently failed to follow the requirements with regard to the execution and filing of the surrender agreement.
In the pending case, the Rochester General Hospital and/or Child Protective Services failed to adhere to the requirements of the Social Services Law by making a timely application to Family Court and by refusing to return the child. Nevertheless, as previously noted by this court during the trial, not every violation of a statute necessarily results in a private cause of action for damages. In any event, as was discussed in Miriam P. v City of New York (supra), involving the intentional tort of unlawful imprisonment, interference with the custodial relationship with a child likewise requires proof of intentional or willful conduct on the part of the defendant. There was no proof, in this record, to indicate that the Rochester General Hospital intentionally or willfully interfered with the lawful custodial rights of the parents. Otherwise stated, absent proof to suggest that their actions involving retention of the child *648 were not taken in good faith, the hospital is entitled to immunity from civil liability, pursuant to the provisions of Social Services Law § 419.
In conclusion, the court agrees with counsel for the defendant, Rochester General Hospital, that the mere fact that this case may have involved a somewhat unusual claim for recovery, which required a resolution of issues not previously decided by any court, this should not deprive the successful party of costs to which it would otherwise be entitled under CPLR 8101.

 The court does not accept the somewhat technical interpretation of this section, as submitted by counsel for the plaintiffs, to limit the authority contained in Social Services Law § 417 (2), to the director or other person in charge of the hospital, as distinguished from other agents or employees of the hospital.