BRENDA CALHOUN, Indiv. and as Next Friend of Waylon Calhoun, a Minor, Plaintiff-Appellant, v. KARL R. JUMER, Defendant-Appellee.

Fourth District    No. 4—97—0243

Opinion filed October 21, 1997.

Mark D. Howard (argued), of Peoria, for appellant.

Robert C. Strodel (argued), of Peoria, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Brenda Calhoun, filed this action in the circuit court of Peoria County against defendant, Karl R. Jumer, alleging in counts IV and VIII that defendant's sexual abuse of her minor son, Waylon Calhoun (W.C.), caused emotional distress to plaintiff. Following a hearing on November 4, 1996, the court granted defendant's motion to dismiss those counts of the complaint for failure to state a cause of action. That order was made final on March 14, 1997, with the court's granting of plaintiff's motion to voluntarily dismiss counts I, II, III, V, VI and VII, which were claims she brought on behalf of the minor son.

On appeal, plaintiff contends this court should, under the alleged circumstances, recognize a cause of action in favor of a custodial biological parent of a minor for emotional distress caused by a defendant's commission of sexual abuse upon that minor. We affirm and agree with the trial court's judgment that plaintiff's complaint failed to state a cause of action.

■ On review of an order passing on the sufficiency of a complaint, all well-pleaded facts and all reasonable inferences from them are taken as true. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115, 660 N.E.2d 863, 867 (1995). Plaintiff alleged in her amended complaint as follows: (1) on December 9, 1995, defendant was an adult guest in plaintiff's house; (2) at that time, plaintiff lived with her eight-year-old son, W.C.; (3) defendant was under a duty to refrain from sexually abusing W.C.; and (4) in violation of that duty and section 12—16(c)(1) of the Criminal Code of 1961 (720 ILCS 5/12—16(c)(1) (West 1994)), defendant committed an act of sexual abuse in that he placed the minor's hand on the defendant's penis for purposes of defendant's sexual arousal. In counts I, II, and III of the complaint, plaintiff alleged defendant's actions caused the minor emotional distress, suffering, humiliation,

and embarrassment. Counts V, VI, and VII were brought on behalf of the minor seeking punitive damages.

In count IV, plaintiff alleged she was in the next room "within 10 feet" of the doorway to the room where the alleged sexual contact took place, and defendant had a duty to plaintiff to refrain from engaging in outrageous conduct that involved an unreasonable risk of causing emotional distress to plaintiff. She further alleged defendant's negligence "in failing to know that his conduct involved [an] unreasonable risk of causing emotional distress to [plaintiff] proximately caused emotional distress" to her. In count VIII, plaintiff alleged defendant violated his duty "to exercise reasonable care to avoid injury or damage to the [p]laintiff" by sexually abusing her minor son.

Plaintiff maintains the trial court, in dismissing counts IV and VIII of her complaint, necessarily found defendant had no duty to plaintiff to avoid sexually abusing her minor child. Defendant argues, however, this court should not create a new cause of action in favor of the minor's mother (plaintiff) for emotional distress caused by defendant's actions upon that minor.

■ The leading and most recent Illinois case concerning the duty one person owes to another to not cause that other person emotional damage resulting from the first person's tortious injury of a third person is *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 457 N.E.2d 1 (1983). There, suit was brought on behalf of a minor child, who was alleged to have been on a Chicago Transit Authority (CTA) escalator when he was eight years old and witnessed his then five-year-old brother being severely injured when his clothing got caught in the escalator, dragging him to the bottom of the escalator, whereby the brother was choked and rendered permanently comatose. The CTA and manufacturers of the escalator were charged with negligence and the manufacturers were charged with defective product liability.

The circuit court dismissed the complaint for failure to state a cause of action, and the appellate court reversed the dismissal except in regard to one manufacturer. *Rickey*, 98 Ill. 2d at 548-49, 457 N.E.2d at 1-2. The supreme court affirmed, allowing, on remand, any amendment consistent with the opinion. *Rickey*, 98 Ill. 2d at 556, 457 N.E.2d at 5. The circuit court followed a long line of cases, starting with *Braun v. Craven*, 175 Ill. 401, 51 N.E. 657 (1898), that prevented a person from recovery for an emotional injury to himself arising from the tortious injury to another unless the person seeking recovery also received physical injury from that event or his body was physically impacted. That rule was referred to as the "impact rule." The *Rickey*

court held that the impact rule was no longer applicable and was to be replaced by a rule that the party seeking recovery for mental anguish from tortious injury to another must have been in the "zone of physical danger" at the time of the injury, which was the case there. *Rickey*, 98 Ill. 2d at 555, 457 N.E.2d at 5. Clearly, under the allegations here, plaintiff was not in the zone of physical danger of injury from defendant. Plaintiff responds to that fact by explaining that here, unlike in *Rickey*, the alleged conduct of the defendant was intentional and not merely negligent as in *Rickey*.

Plaintiff requests that we establish, in this jurisdiction, a rule that close family members of a victim have a cause of action for whatever emotional harm they receive from injury intentionally and tortiously inflicted upon another family member. Plaintiff cites first *Croft v. Wicker*, 737 P.2d 789 (Alaska 1987), where an employee (Wicker) sued his supervisor (Croft) for wrongful discharge and Croft, his wife, and daughter counterclaimed for injury resulting when Wicker allegedly molested Croft's daughter while taking her for a ride on a three-wheeler. The counterclaim alleged the parents were present when Wicker and their daughter started the ride and the two of them were in "close proximity" to the parents when Wicker touched the daughter "in a sexual manner." *Croft*, 737 P.2d at 790. The parents further alleged they subsequently witnessed the daughter's emotional distress and suffered such distress themselves. That court held the counterclaim stated a cause of action.

Plaintiff also relies on *Bishop v. Callais*, 533 So. 2d 121 (La. App. 1988), and *Doe v. Cuomo*, 43 Conn. Supp. 222, 239, 649 A.2d 266, 274 (1994), both of which involved alleged sexual assaults upon minors by persons who clearly had been entrusted with the care of the minor. In *Bishop*, the assault allegedly occurred when the minor was confined in a hospital for psychiatric treatment. In *Doe*, the allegedly molested child was a guest in the home of the defendant.

Here, the minor child was not alleged to be in the custody of the defendant. We express no opinion as to whether a parent may have a cause of action for mental suffering against another who molests his or her child while the child has been entrusted with that person. We hold that, absent entrustment, no cause of action exists for a parent under the allegations here.

We do note that even when the injured child has been entrusted to the defendant and is injured through the tortious conduct of the defendant, parents have been held to have no cause of action. In *Martin v. United States*, 779 F. Supp. 1242, 1248-50 (N.D. Cal. 1991), *aff'd in part & rev'd in part on other grounds*, 984 F.2d 1033 (9th Cir. 1993), when a child was placed in a day-care center and raped, the

day-care center was held not liable to the child's mother for emotional distress even if the day-care center was negligent. However, that case did not decide whether the mother had a cause of action against the rapist. Rather, the case decided that the tort of negligent supervision, which was not based upon an intentional act, did not create liability.

Similarly, in *Johnson v. Jamaica Hospital*, 62 N.Y.2d 523, 526-27, 467 N.E.2d 502, 503, 478 N.Y.S.2d 838, 839 (1984), the court of appeals of New York held that the parents of an infant who was abducted from the defendant hospital could not recover damages for their own emotional distress resulting from the hospital's negligence in its care of the child. That court determined the plaintiffs were not alleged to be within the "zone of danger" nor did their emotional distress result from "contemporaneous observation of serious physical injury or death caused by defendant's negligence." *Johnson*, 62 N.Y.2d at 526, 467 N.E.2d at 503, 478 N.Y.S.2d at 839. The court concluded that the defendant hospital did not owe the plaintiff parents a direct duty to refrain from causing them psychic injury.

In *McDonald v. Jarrabet*, 188 A.D.2d 1045, 1046, 591 N.Y.S.2d 676, 677-78 (1992), the court held that a parent who did not witness an alleged sexual assault upon her daughter had no personal cause of action against the defendant for negligent infliction of emotional distress.

We recognize that plaintiff's theory would impose general liability on a tortfeasor in favor of parents only when his tort is intentional, abhorrent, and criminal. Where, as here, no entrustment is involved, of the cases cited, only *Croft* and *McDonald* are directly on point. We agree with plaintiff that when sexual misconduct is the tort for which parents seek relief, the question of whether the parents actually witness the act or acts involved is a rather arbitrary threshold as to whether liability arises.

Nevertheless, the situation here is far different than in *Rickey* where an eight-year-old boy was traumatized by seeing his brother choking. Plaintiff impliedly suggests that every time a person commits an intentional tort arising from a criminal, physical act against a victim, a cause of action should lie against the tortfeasor and in favor of the family members of the victim for any trauma they suffered. That is not the law. Only with artificial boundary lines can we prevent that from happening. Here, the facts that the tort was not alleged to occur in the presence of plaintiff and the child was not alleged to be entrusted to defendant are sufficient to justify the dismissal of the complaint.

Much of the expansion of the cause of action for emotional suffering brought against one who wrongfully injures a family member of

822

the person bringing the action arises from *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968). There, a majority of the Supreme Court of California allowed a mother who was a bystander or "percipient witness" to the infliction of injury and death to her daughter to have a cause of action for the mother's emotional injury against a negligent driver who drove the vehicle that hit the daughter. Despite the attractive position of the *Dillon* plaintiffs, three justices, including the highly distinguished Chief Justice Traynor, dissented on the basis that a prior decision of that court (*Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal. 2d 295, 379 P.2d 513, 29 Cal. Rptr. 33 (1963)) had rejected the theory of the majority as unsound and opening the door into the " 'fantastic realm of infinite liability.' " *Dillon*, 68 Cal. 2d at 749, 441 P.2d at 926, 69 Cal. Rptr. at 86 (Burke, J., dissenting, joined by McComb, J.), quoting *Amaya*, 59 Cal. 2d at 315, 379 P.2d at 525, 29 Cal. Rptr. at 45. We share some of that skepticism in regard to plaintiff's theory here.

Accordingly, we affirm the judgment on appeal.

Affirmed.

GARMAN and KNECHT, JJ., concur.