OPINION OF THE COURT
Michael A. Ciaffa, J.
Hospices play a critical role, today, in caring for the terminally ill. The last four decades have seen the hospice care movement *918 grow rapidly, from a small National Cancer Institute demonstration project to a 12 billion dollar a year industry. (See Audrey Sander Hagerman, Hospice: An Alternative Treatment of Care for the Terminally Ill, 8 Pace L Rev 115 [1988]; Rau, Concerns About Costs Rise With Hospices’ Use, New York Times, June 27, 2011, at Dl.)
Hospice programs, as currently structured, are designed to provide comprehensive “palliative and supportive services . . . [to] dying persons and their families.” (Hagerman, at 116 [emphasis added].) Since 1982, the cost of hospice care has been funded mostly by Medicare. (Hagerman at 117.) Under current Medicare reimbursement guidelines, hospice care is “a lucrative business.” (Rau, supra.)
This action by the daughter of a now-deceased hospice patient raises novel issues regarding a hospice’s duty and potential liability to the family of a hospice patient for breach of contract. Can a hospice be found liable to a family member of a patient if it breaches a contractual obligation to care for the patient? The question requires close analysis of whether the family member is an intended beneficiary of the contract, or is merely an incidental beneficiary.
A second novel issue concerns the scope of a hospice’s potential liability for breach of contract. Is it limited to pecuniary losses suffered by the contract’s intended beneficiary? Or can it include “mental distress” damages?
Although mental distress damages are usually not available as a remedy for breach of contract, the case law recognizes a narrow exception for “exceptional cases” typically involving death and dead bodies. To date, our state’s courts have been unwilling to extend the rationale of the exception to “indirect emotional injuries” caused by a hospital or a hospice. But the facts at bar arguably present a more difficult case of claimed mental distress damages by the hospice patient’s primary caregiver, premised upon the fact that such damages are both direct and reasonably foreseeable.
Plaintiff, Judy Cianciotto, commenced the instant action against defendant Hospice Care Network in August 2010. Her pro se complaint alleges, inter alia, that her terminally ill father was transferred to defendant’s hospice hospital in June 2007, pursuant to a written agreement and defendant’s assurances that defendant would provide comfort care to her father for up to six months. Defendant allegedly breached its agreement when it told plaintiff that her father would have to leave the hospice *919 after only a few weeks. Plaintiff seeks $15,000 in damages from defendant as a result.
Defendant’s answer to the complaint contests plaintiffs right to pursue the action on multiple legal grounds. Its answer includes a series of affirmative defenses. In its first affirmative defense, defendant disputes plaintiffs standing to seek damages on behalf of plaintiffs deceased father. In its second affirmative defense, defendant contends that “pain and suffering damages cannot be recovered” upon plaintiffs breach of contract claim. The third affirmative defense alleges that the complaint fails to state a cause of action. Defendant’s fourth and fifth affirmative defenses assert, in pertinent part, that it “did not breach any duty to the plaintiff” and that it “had no contract with the plaintiff.” Finally, defendant’s sixth affirmative defense contends that “any claim for personal injury to plaintiff’s decedent, or for medical malpractice, would be barred by the applicable statute of limitations.”
Upon defendant’s motion for summary judgment, the parties have submitted extensive written arguments addressing the foregoing defenses. Although plaintiff continues to proceed pro se, she has been aided and guided by pro bono counsel, in a manner that has been disclosed to all concerned. Such assistance, while beneficial and ethically permissible (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.2 [c]), leaves plaintiff in a position where her submissions are not to be given any special and liberal construction.
To the extent that plaintiff’s complaint and related submissions assert claims for personal injuries and other damages that her father allegedly suffered before his death, defendant correctly argues that such claims may properly be brought only by her late father’s estate. Although plaintiff submits proof that she was recently appointed administrator of the estate in March 2011, her belated appointment does not alter the fact that this action was not filed on behalf of the estate. Moreover, under controlling appellate precedent, plaintiff could not have lawfully brought suit on her father’s behalf prior to her appointment as administrator. (See Mingone v State of New York, 100 AD2d 897 [2d Dept 1984].)
Accordingly, the merits of plaintiffs lawsuit must stand or fall on whether she possesses a viable cause of action against defendant on her own behalf. Since plaintiff may thus pursue only her own personal claims, the court expresses no opinion on whether the estate may pursue any potentially viable claims, or *920 whether any such claims can be brought under applicable periods of limitation. (See CPLR 210 [a]; 213 [2]; 214 [5]; 214-a.)
Turning to plaintiffs personal claims, the court rejects any suggestion that her personal claims are barred by limitations. Based upon the allegations of plaintiffs complaint, it appears that plaintiff has elected to pursue her action principally on a breach of contract theory. If such a claim is viable, the six-year statute of limitations governing contract claims (CPLR 213) applies to this lawsuit. (See Hechter v New York Life Ins. Co., 46 NY2d 34 [1978]; Henderson v Lincoln Rochester Trust Co., 198 Misc 82 [Sup Ct, Monroe County 1950], affd 277 App Div 1093 [4th Dept 1950], affd 303 NY 27 [1951].) Furthermore, plaintiffs affidavits allege that defendant defrauded her. Fraud claims, by law, are subject to at least a six-year statute of limitations. (See CPLR 213 [8]; 203 [g].)
Both theories are problematic, however. Although plaintiffs complaint (1Í 4) alleges that “plaintiff and defendant entered into a written agreement” for her father’s care, her submissions admit that the written agreement in this case, on its face, was signed by her father only. More importantly, plaintiffs complaint does not assert a “third-party beneficiary” theory of liability against defendant. In other contexts, courts have refused to consider an unpleaded third-party beneficiary theory of liability as a basis for defeating a defendant’s motion for summary judgment. (Cf. Mainline Elec. Corp. v Pav-Lak Indus., Inc., 40 AD3d 939 [2d Dept 2007].) Nor does the complaint or plaintiffs submissions set forth a facially adequate and particular cause of action for fraud. (See CPLR 3016 [b]; cf. Fairfax Assoc. v Slater, 36 Misc 2d 537 [Sup Ct, Nassau County 1962].)
Nevertheless, so long as the applicable statute of limitations would not bar a late amendment, a court should not “permit unconditional summary judgment in favor of defendant, as a matter of law, if plaintiffs submissions provide[ ] evidentiary facts making out a cause of action.” (See Alvord & Swift v Muller Constr. Co., 46 NY2d 276, 280 [1978].) Instead, the most appropriate response would be to grant the defendant’s motion, but permit the plaintiff to serve an amended complaint that properly asserts a viable cause of action. (Id. at 281; see e.g. Wolfson v Mandell, 13 AD2d 760 [1st Dept 1961]; Fairfax v Slater, 36 Misc 2d at 538.)
Under the circumstances presented, it appears that plaintiff may be able to pursue a viable cause of action against *921 defendant on the theory that she was an intended “third-party beneficiary” of the written agreement between defendant and her late father. The issue, as presented in the context of a hospice care agreement, is one of first impression. But the generally applicable principles can be traced back many years.
Since the decision in Lawrence v Fox (20 NY 268 [1859]), the Court of Appeals has often acknowledged that certain types of intended beneficiaries of a contract could sue for its breach, regardless of considerations of privity. Based upon the “settled law” in England, our state’s lower courts had recognized the principle by 1806, and had “never departed from [it].” (See Lawrence v Fox, 20 NY at 271.)
As the Court of Appeals later recognized, the rule has particular application in cases involving persons in close familial relationship with a contracting party. Thus, in Seaver v Ransom (224 NY 233 [1918]), Judge Pound’s majority decision explicitly held that a person in “close relationship” to a contracting party might sue as an intended “beneficiary” of the contract. After noting that the “close relationship cases” go back to an “early King’s Bench case” decided in 1677 (224 NY at 237), the Court of Appeals added: “The natural and moral duty of the husband or parent to provide for the future of wife or child sustains the action on the contract made for their benefit.” (Id. at 238.) The Court went on to extend the rationale of the “close relationship” cases to the niece of a contracting party who had made an agreement for her benefit. Although the agreement was merely “based on the moral obligations arising out of near relationship,” the majority followed a “progressive” course in upholding the niece’s right to sue upon the agreement as its beneficiary. (Id. at 239, 240.)
Thirteen years later, in Ultramares Corp. v Touche (255 NY 170, 180 [1931]), Judge Cardozo’s oft-cited opinion took note of an ongoing “assault upon the citadel of privity.” His opinion adds: “In the field of the law of contract, there has been a gradual widening of the doctrine of Lawrence v. Fox . . . until today the beneficiary of a promise, clearly designated as such, is seldom left without a remedy.” (Id. at 180-181.)
More recent decisions have noted the difficulty of applying “[t]he intent to benefit test” described in the Court’s precedents. (See Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 38, 43 [1985].) But the general principles are now well established, with current case law applying the formulations set forth in the Restatement (Second) of Contracts. (Id. at 44.)
*922 The Restatement formulations focus principally on whether the party bringing suit is an “intended” beneficiary or merely an “incidental” beneficiary of the contract. (Id.) Only “intended” beneficiaries can bring suit as third-party beneficiaries today. (Id.) Although the latter distinction is not always easy to apply, an alleged beneficiary can prevail by pointing to circumstances which “indicate that the promisee intends to give the beneficiary the benefit of the promised performance.” (Id.) “Among the circumstances to be considered is whether manifestation of the intention of the promisor and promisee is ‘sufficient, in a contractual setting, to make reliance by the beneficiary both reasonable and probable.’ ” (Id., quoting Restatement [Second] of Contracts § 302, Comment d.)
Plaintiffs submissions, read in a light most favorable to her, present a factually sufficient and viable case for recognizing her as an intended third-party beneficiary of the hospice care agreement between defendant and her late father. Notably, the agreement, itself, mentions her by name as her father’s “primary caregiver.” Under the terms of the defendant’s program for providing “palliative care” to plaintiffs father, the agreement specifically contemplated the provision of assistance to plaintiff, as primary caregiver, by members of the Hospice team (see exhibit A to supplemental affidavit in opposition 114). As plaintiff understood the agreement, it was intended to provide a significant benefit to her, specifically, in meeting her responsibilities to her father in the last months of his life. In her own words, it was clear to her that she would be a substantial beneficiary from her father’s care in the Hospice, as she “was to be relieved of the heavy responsibility, due to [her father’s] declining and debilitating condition, of being the actual primary caregiver.” (Supplemental affidavit in opposition 1i 4.)
Furthermore, when plaintiff’s assertions are considered in the context of federal regulations governing hospice care throughout the United States (42 CFR part 418), the court cannot conclude that plaintiffs expectations were unreasonable. Indeed, the term “Hospice care,” as defined in the federal regulations, extends to a “comprehensive set of services” providing for “the physical, psychosocial, spiritual, and emotional needs of a terminally ill patient and . . . [the patient’s] family members” (42 CFR 418.3; see also Hagerman, 8 Pace L Rev at 116).
Plaintiff, as her father’s designated caregiver, appears to fit squarely within the category of “family members” who are the *923 intended beneficiaries of such “comprehensive” services. Moreover, plaintiff alleges that defendant breached its agreement when it failed to care for her father in a manner that relieved her, as his primary caregiver, of many heart wrenching duties associated with her father’s terminal illness.
No contrary evidence was presented by defendant on either point. While defendant’s actions may, in the end, prove to have been appropriate under both its agreement and the federal regulations governing hospice admissions, transfers, and discharges, the test on summary judgment gives the benefit of the doubt to the opposing party. (See Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) Under the unique circumstances presented, “an issue of fact exists as to whether the parties intended to benefit the plaintiff, thereby making the plaintiff a third-party beneficiary under New York law.” (See Zucker v Kid Gloves, 234 AD2d 598, 599 [2d Dept 1996].) Consequently, the court cannot conclude, as a matter of law, that defendant met its heavy burden to defeat plaintiffs claim that she was an intended third-party beneficiary of the hospice agreement.
Nevertheless, plaintiffs claimed status as an intended third-party beneficiary gets her only so far, and begs the issue of whether she possesses a viable claim for damages. This point, too, is problematic for the plaintiff. Because of the manner in which hospice programs are structured, the cost of the hospice was borne by Medicare. No claim is made that plaintiff was forced to incur any personal care-related expenses on account of defendant’s alleged breach of the agreement. Instead, plaintiff appears to be claiming that defendant’s actions “resulted in paralyzing the plaintiffs existence, and causing personal and economic harm” in the form of lost business opportunities as a comedienne.
As defendant correctly observes, pain and suffering damages are not ordinarily recoverable in a breach of contract action.
“Generally, mental suffering resulting from a breach of contract is not an element of the compensatory damages recoverable in an action for such breach. In such an action, the measure of damages is usually such an amount only as will repay the plaintiff for the money loss which he or she has suffered because of the failure of the defendant to do as he or she agreed.” (36 NY Jur 2d, Damages § 103.)
*924 However, the foregoing rule is not an absolute one. “The general rule that mental suffering resulting from a breach of contract is not a subject of compensation does not obtain . . . where the suffering was caused by the breach of some special duty owed the plaintiff’ (id.).
To date, our state’s courts have narrowly limited the exception to a small category of cases, typically involving “exceptional circumstances” such as the mishandling of a dead body or a hospital’s breach of duty to transmit truthful information concerning a relative’s death or funeral. (See Johnson v Jamaica Hosp., 62 NY2d 523, 530 [1984] [citing cases].) However, in Johnson, the Court refused to allow the parents of an abducted newborn infant to sue a hospital for emotional distress caused by the hospital’s alleged breach of a duty owed directly to them, as parents. Judges Meyer and Jason, dissenting, favored a broader rule that would have allowed the suit to proceed, but the majority, fearing “boundless liability for indirect emotional injury,” held there was “no basis for establishing such a direct duty.” (Id. at 530, 526.)
More recently, in Yates v Genesee County Hospice Found. (278 AD2d 928, 929 [4th Dept 2000]), the Court likewise rejected claims for emotional injuries that the plaintiffs “sustained as a result of witnessing tbe allegedly negligent care provided to decedent by defendants.” (See also decision on later appeal, 299 AD2d 900 [4th Dept 2002].) Such a claim was not deemed valid regardless of whether it was pleaded under theories of negligence or breach of contract. (299 AD2d at 901.)
On the other hand, other state courts have drawn the line differently in cases involving “life and death” contracts, such as “a contract to care for the plaintiff’s elderly mother and to notify the plaintiff in the event of the mother’s illness.” (Lane v Kindercare Learning Ctrs., Inc., 231 Mich App 689, 693, 588 NW2d 715, 717 [1998], discussing Avery v Arnold Home, Inc., 17 Mich App 240, 243, 169 NW2d 135, 136 [1969].) If the contract to care for a person’s father or child is a matter of “mental concern and solicitude,” the court reasoned that a breach would likely cause foreseeable “mental distress.” (231 Mich App at 694, 588 NW2d at 718.) Consequently, a court could properly find in such a case that mental anguish damages might be “within the contemplation of the parties” and thus would be recoverable in a breach of contract action. (Lane, 231 Mich App at 694, 588 NW2d at 718.)
The decision in Lane is not an aberrational one. As Williston on Contracts recognizes, “numerous cases allowing the recovery *925 of emotional distress damages exist, invariably dealing with what might be called peculiarly sensitive subject matter” (24 Lord, Williston on Contracts § 64:7 [4th ed]).
Plaintiff clearly has an uphill battle to fight on the issue, but the court need not make a definitive ruling on whether plaintiff may properly pursue a claim for mental anguish or other emotional injury against the defendant under the facts at bar. While the decisions in Johnson and Yates strongly suggest that plaintiffs damages may be limited by law to her pecuniary losses, the facts of those cases are not precisely analogous. Unlike the circumstances there presented, the plaintiffs alleged injury is not merely derivative of the harm done to her father, but rather includes direct foreseeable harm to her, personally, as an intended third-party beneficiary of the hospice agreement.
Although “consequential” emotional injuries are not recoverable under the Court of Appeals case law, emotional injuries that result “directly rather than consequentially” from a breach of duty can indeed be recovered. (See Kennedy v McKesson Co., 58 NY2d 500, 507 [1983].) Moreover, plaintiffs claim for pecuniary damages in terms of lost earnings is not frivolous on its face. So viewed, plaintiff will be afforded the opportunity, upon repleading, to assert a limited claim for damages as a third-party beneficiary of the agreement.
In conclusion, this court sees no good reason why plaintiffs claims should be summarily dismissed at this juncture. As the Court of Appeals has noted in different contexts: “[I]t is the strength of the common law to respond, albeit cautiously and intelligently, to the demands of commonsense justice in an evolving society.” (Thyroff v Nationwide Mut. Ins. Co., 8 NY3d 283, 291 [2007], quoting Madden v Creative Servs., 84 NY2d 738, 744 [1995].) With respect to hospice care, today, “[t]hat time has arrived.” {Thyroff at 291.)
Accordingly, for the foregoing reasons, plaintiffs complaint is dismissed, with leave to replead within 30 days of service of this order, with notice of entry.